**Michael MARCAVAGE, Mark Diener, Linda Beckman, Randall Beckman, Susan Startzell, Arlene Elshinnawy and Nancy Major, Petitioners**

v.

**Edward G. RENDELL, Governor of the Commonwealth of Pennsylvania, John M. Perzel, Speaker of the Pennsylvania House of Representatives, Robert C. Jubelirer, President Pro Tempore of the Pennsylvania Senate, Honorable Pedro A. Cortes, Secretary of the Commonwealth of Pennsylvania, All in their Official Capacities and not in Their Private Capacities, and Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 13, 2007.

Decided Nov. 15, 2007.

Aaron D. Martin, Kennett Square, for petitioners.

Howard G. Hopkirk, Sr. Deputy Attorney General, Harrisburg, for respondents, Edward G. Rendell, Pedro A. Cortes, and Commonwealth of Pennsylvania.

Jonathan F. Bloom, Philadelphia, for respondent, John M. Perzel.

Linda J. Shorey and Amy L. Groff, Harrisburg, for respondent, President Pro Tempore of the PA Senate.

BEFORE: LEADBETTER, President Judge, and COLINS, SMITH–RIBNER, PELLEGRINI and SIMPSON, JJ.

OPINION BY Judge COLINS.

The named Petitioners have filed an amended petition for review in our original jurisdiction, seeking (1) a declaration that the Act of December 3, 2002, P.L. 1176, No. 143 (Act 143), amending Section 2710 of the Crimes Code (ethnic intimidation), 18 Pa.C.S. § 2710, was enacted in violation of Article III, Sections 1, 2, 3, and 4 of the Pennsylvania Constitution and (2) an injunction permanently enjoining its enforcement.[1] The parties' cross-motions for summary relief are presently before the Court.[2]

Act 143 amended Section 2710 of Title 18, relating to the offense of ethnic intimidation, to include acts of malicious intention toward the "actual or perceived race, color, religion, national origin, ancestry, mental or physical disability, sexual orientation, gender or gender identity," when such conduct occurs in the course of the commission of certain other offenses defined in the Crimes Code.[3] Petitioners initiated this action after they were arrested and charged under Act 143 for evangelizing against individuals that were participating in a gay rights event in Philadelphia. Although the charges were eventually dismissed, Petitioners assert that they intend to engage in the same type of activity in the future and fear that they will be criminally charged again under Act 143.

Act 143 began as House Bill 1493 (HB 1493), Printer's Number 1812, entitled: "An Act amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, providing for the criminal offense

1. Petitioners also alleged that the process used to enact Act 143 violated their rights pursuant to Article I, Sections 1, 20, and 26 of the Pennsylvania Constitution, but have abandoned that claim.

2. This Court has previously issued a single judge opinion and order denying Petitioners' request for preliminary injunctive relief, and in a separate panel decision overruled Respondents' preliminary objections in *Marcavage v. Rendell*, 888 A.2d 940 (Pa.Cmwlth. 2005). In the intervening time our Supreme Court has decided the matter of *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383, 393 (2005).

3. As amended, 18 Pa.C.S. § 2710, provides as follows. Additions are indicated by underline and deletions by strikeout:

§ 2710. **Ethnic intimidation**
(a) **Offense defined.**—A person commits the offense of ethnic intimidation if, with malicious intention toward the actual or

perceived race, color, religion, or, national origin, ancestry, mental or physical disability, sexual orientation, gender or gender identity of another individual or group of individuals, he commits an offense under any other provision of this article or under Chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under section 3503 (relating to criminal trespass) with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

\* \* \*

(c) **Definition.**—As used in this section "malicious intention" means the intention to commit any act, the commission of which is a necessary element of any offense referred to in subsection (a) motivated by hatred toward the actual or perceived race, color, religion or national origin, ancestry, mental or physical disability, sexual orientation, gender or gender identity of another individual or group of individuals.

of agricultural crop destruction," and was referred to the House Committee on Agriculture and Rural Affairs on May 2, 2001. The substance of the bill provided as follows:

§ 3310. Agricultural crop destruction.

(a) Offenses defined—A person commits a felony of the second degree if he intentionally and knowingly damages any field crop that is grown for personal or commercial purposes, or for testing or research purposes for a product development program in conjunction with a public or private research facility or a university or any Federal, State or local government agency.

(b) Restitution; costs and fees—Any person convicted under subsection (a) may also be sentenced to make restitution and be ordered to pay attorney fees and court costs.

On May 8, 2001 HB 1493 was reported out of the Agricultural and Rural Affairs Committee, considered by the full House of Representatives, and laid on the table. On May 22, 2001, HB 1493 was considered for a second time and referred to the House Appropriations Committee. On June 4, 2001, HB 1493 was re-reported to the House as committed to the House Appropriations Committee and considered for a third time on June 4, 2001, with amendments. This was Printer's Number 2087, which amended the title to HB 1493 to read: "An Act Amending title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, FURTHER PROVIDING FOR AGRICULTURAL VANDALISM; AND providing for the criminal offense of agricultural crop OR LIVESTOCK destruction." The House passed the amend-

ed version on June 4, 2001, and referred it to the Pennsylvania Senate.

In the Senate, HB 1493 was referred to the Agricultural and Rural Affairs Committee on June 11, 2001. On June 13, 2001, HB 1493 was reported back to the Senate as committed and received first consideration by the full Senate. On June 19, 2001, HB 1493 received second consideration. On June 21, 2001, an amended HB 1493, Printer's Number 2382, received third consideration by the full Senate. The amendment deleted the language passed by the House and replaced it with language expanding the scope of protected individuals for purposes of defining the offense of Ethnic Intimidation under Section 2710 of the Crimes Code. The amended title to HB 1493 read: "An Act Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, further providing for ETHNIC INTIMIDATION." The Senate passed the amended version of HB 1493 on June 21, 2001, and sent it back to the House.[4]

HB 1493 was referred to the House Committee on Rules on June 21, 2001. On March 21, 2002, HB 1493 was referred to the House Judiciary Committee. HB 1493 was re-reported as committed by the Judiciary Committee to the full House, on November 12, 2002. On November 18, 2002, HB 1493 was re-committed to the House Committee on Rules and then re-reported to the full House on November 26, 2002. The House concurred in the Senate Amendments on November 26, 2002 and HB 1493 was signed by the Chief Clerks of both chambers on the same day. The Honorable Mark Schweiker, then Governor of Pennsylvania, signed HB 1493, Printer's Number 4156, into law as Act No. 143 of 2002, on December 3, 2002.

---

**4.** Printer's Numbers 3723 and 4156 were printed as corrective reprints with the amendments voted on by the Senate.

Petitioners argue that Act 143 is unconstitutional under Article III of the Pennsylvania Constitution because HB 1493: was amended to change its original purpose in violation of Section 1 (Count 1); as amended, was not re-referred to a committee in violation of Section 2 (Count 2); as amended, contained a title that did not clearly express the subject of the bill in violation of Section 3 (Count 3); and last, the language of Act 143 was not considered on three separate days in violation of Section 4 (Count 4). Both parties are seeking summary relief.

Summary relief is properly granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *DeWeese v. Weaver*, 880 A.2d 54, 59 (Pa.Cmwlth.2005), *affirmed, DeWeese v. Cortes*, 588 Pa. 738, 906 A.2d 1193 (2006). The Court will view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. *Id.* Because there are no facts in dispute, the sole issue for our determination in disposing of the parties' cross-motions for summary relief is whether the legislative process leading to the enactment of Act 143 violated Article III, Sections 1, 2, 3, and 4 of the Pennsylvania Constitution.

■ It is well established that a legislative enactment enjoys a strong presumption of constitutionality and it will not be declared invalid unless it clearly, palpably, and plainly violates the Constitution. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383, 393 (2005) (hereinafter, PAGE). The party seeking to overcome this presumption bears a heavy burden of persuasion and the Court will resolve all doubts in favor of a finding of constitutionality. *Commonwealth v.*

*Hendrickson*, 555 Pa. 277, 724 A.2d 315, 317 (1999).

In Count I, Petitioners argue that the enactment of Act 143 following the Senate's amendment to HB 1493 on June 21, 2001, violated Article III, Section 1 of the Pennsylvania Constitution by altering its original purpose. This Section provides that "[n]o law shall be passed except by bill, and no bill shall be altered or amended, on its passage through either House, as to change its original purpose." PA. CONST. art III, § 1.

■ Our Supreme Court recently announced a new two-prong test for determining whether legislation violates Article III, Section 1. *PAGE*, 877 A.2d at 408–409. First, the Court must consider the legislation's original purpose and compare it to the final purpose to determine whether there has been an alteration or amendment that changed the original purpose. *Id.* Second, the Court must consider whether the title and contents of the legislation are deceptive in their final form. *Id.* at 409. The challenged legislation must survive both inquiries to pass constitutional muster. *Id.*

■ Under the initial inquiry, the reviewing Court must view the legislation's original purpose in "reasonably broad terms," so as to provide the General Assembly with a "full opportunity to amend and even expand a bill, and not run afoul of the constitutional prohibition on an alteration or amendment that changes its original purpose." *Id.* The *PAGE* Court further instructed that the reviewing court should "hypothesize, based on the *text* of the statute, as to a reasonably broad original purpose." *Id.* (Emphasis added.)

Petitioners maintain that even when viewed in reasonably broad terms, the original purpose of HB 1493 is not present from introduction to enactment. Petition-

ers argue that the "wholesale gutting of the bill" on the Senate floor drastically altered its original purpose from a bill regulating conduct respecting agricultural property to one creating special rights for certain classes of citizens. Petitioners further argue that while HB 1493 does amend the Crimes Code, construing the original purpose of the bill as one that regulates or criminalizes conduct would exceed the reasonably broad standard of *PAGE*.

In response, Respondents contend that from beginning to end, the purpose of HB 1493 was to amend the Crimes Code. Respondents argue that HB 1493 originally sought to expand the conduct and penalties for agricultural property destruction, while in its final form also sought to expand conduct and penalties for crimes, but directed its focus at crimes conducted with malicious intent toward certain classifications of people. Respondents assert that all of the amendments contained in the final version of HB 1493 satisfy the reasonably broad original purpose of amending the Crimes Code.

In *PAGE*, the Supreme Court considered a challenge to the constitutionality of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904, which began as a one page bill that provided the Pennsylvania State Police with the authority to perform background checks on applicants seeking a license from the State Horse and Harness Racing Commissions. After passing through three considerations in the House and two considerations in the Senate, the bill was extensively amended on its third consideration in the Senate. As amended, and eventually enacted, the 145 page bill created the Pennsylvania Gaming Control Board, established a number of special funds, authorized the issuance of gambling licenses for slot casinos, and among other things, set jurisdictional requirements upon the Supreme Court. In determining

that the challenged legislation did not violate the original purpose requirement, the *PAGE* Court stated:

Considering the original purpose in reasonably broad terms, we believe that here, and in this instance akin to our finding above regarding a single unifying subject, the original purpose of the bill was to regulate gaming. As finally passed, we find that the primary objective of the legislation was to regulate gaming. Based on the above, we conclude that the bill was not altered or amended to change its original purpose. *Id.* (citation omitted).

In light of the comparative construct required by *PAGE*, we agree with Petitioners that HB 1493 did not retain its original purpose as it moved through the enactment process. The original purpose of HB 1493, viewed in reasonably broad terms, was to criminalize crop destruction. As ultimately enacted, HB 1493 expanded the classification of persons protected under the offense of ethnic intimidation. Unlike the legislation in *PAGE*, both the initial and final versions of HB 1493 do not regulate the same discrete activity. The original version and final version of HB 1493 regulate vastly different activities, albeit under the broad heading of crime. However, to conclude that the General Assembly could initiate a piece a legislation in the context of the Crimes Code and rely upon that concept as a unifying justification for amendments to bills under the Crimes Code that contain no nexus to the conduct to which the original legislation was directed would stretch the Supreme Court's meaning of "reasonably broad terms." As directed by the Supreme Court, when we "hypothesize, based on the *text* of the initial bill," we cannot conclude that the amendments retained the original purpose of HB 1493.

We emphasize that no matter how salutary the purpose of a bill may be, it still

must comport with constitutionally mandated requirements for passage. Therefore, we conclude HB 1493 was altered to change its original purpose and Petitioners are entitled to summary relief on this basis.

Based on our determination that the enactment of HB 1493 violated Article III, Section 1, we do not reach counts 2, 3, and 4, of Petitioners' amended petition for review. Accordingly, Petitioners' motion for summary relief is granted and Respondents' motion for summary relief is denied and Act 143 of 2002 is declared unconstitutional and therefore null and void.

President Judge LEADBETTER dissents.

Judge COHN JUBELIRER and Judge LEAVITT did not participate in this decision.

## *O R D E R*

AND NOW, this 15th day of November 2007, the named Petitioners' motion for summary relief is GRANTED and the named Respondents' cross-motions for summary relief are DENIED. The Act of December 3, 2002, P.L. 1176, No. 143 is hereby declared UNCONSTITUTIONAL and VOID.