35 A.3d 1206

COMMONWEALTH of Pennsylvania, Appellant

v.

Antoine MILLER, Appellee.

Supreme Court of Pennsylvania.

Argued May 11, 2011.

Decided Jan. 20, 2012.

Michelle P. Hutton, George Michael Green, John Francis X. Reilly, Delaware County District Attorney's Office, for the Commonwealth of Pennsylvania.

Mary L. Huber, Hugh J. Burns, Ronald Eisenberg, Philadelphia District Attorney's Office, Joseph E. McGettigan III, Rufus Seth Williams, Office of the District Attorney of Philadelphia County, for amici curiae.

William E. Ruane, Spiros Ernest Angelos, Delaware County Public Defender's Office, for Antoine Miller.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

The question presented for our review implicates the issue of inconsistent verdicts in the context of a second-degree murder conviction. Because the Superior Court erroneously concluded that a jury's verdict of guilt on a second-degree murder charge and its acquittal on the predicate felony of robbery were impermissibly inconsistent and could not stand, we vacate the Superior Court's order.

On or about April 11, 2006, Antoine Miller ("Appellee") brutally murdered Wallace Bivens in his Delaware County apartment and then stole his vehicle. Appellee was arrested later that evening after police noticed him driving the victim's vehicle without headlights and he engaged the officers in a high-speed chase. Appellee was charged with a number of violations of the Motor Vehicle Code, including fleeing or attempting to elude an officer, accident involving damage to unattended vehicle or property, and reckless driving.[1] Not yet realizing that the owner of the vehicle that Appellee was driving had been murdered, police impounded the vehicle and sent a notice of impoundment to the victim's residence. Approximately two weeks later, on April 24, 2006, while attempting to serve an eviction notice on the victim, a state constable discovered the victim's decaying body in the living room closet of his apartment. An autopsy revealed that the victim had

---

1. Respectively 75 Pa.C.S. §§ 3733, 3745, 3736.

died from multiple sharp and blunt wounds inflicted with at least two different instruments, which were not recovered.

In a trashcan in the victim's apartment, police found an iced tea can and a cigarette butt, which, upon subsequent analyses, were shown to contain Appellee's fingerprint and DNA, respectively. In addition, Appellee's thumbprint was detected on the outside doorknob of the door to the closet in which the victim's body was found. The victim's cell phone and cell phone holder, stained with blood, were found in the victim's impounded vehicle. DNA analysis revealed that the blood on the cell phone and holder matched that of the victim, as did blood found on a sneaker worn by Appellee when he was arrested in possession of the victim's vehicle. The final call made from the victim's cell phone was to Appellee.

Appellee was charged with first-, second-, and third-degree murder; robbery, which was the Commonwealth's predicate offense for the second-degree murder charge; aggravated and simple assault; theft, by unlawful taking and by receiving stolen property; and possessing an instrument of crime.[2] Following a jury trial, Appellee was found guilty of second-degree murder, theft by unlawful taking, and fleeing or attempting to elude an officer, but he was acquitted of first-degree murder, robbery, aggravated assault, and possessing an instrument of crime. The jury rendered no verdict on third-degree murder and theft by receiving stolen property. On April 17, 2007, following a pre-sentence investigation and psychiatric evaluation, the court sentenced Appellee to life imprisonment without parole for the second-degree murder conviction, as well as to a total term of not less than three nor more than six years' imprisonment for the theft and fleeing an officer convictions.

Appellant appealed to the Superior Court, contending that the evidence was insufficient to sustain his second-degree murder conviction because he had been acquitted of the predicate offense of robbery. The Superior Court reversed Appellee's second-degree murder conviction and vacated his

2. Respectively, 18 Pa.C.S. §§ 2502(a), (b), and (c); 3701(a)(1); 2702(a) and 2701(a)(1); 3921(a) and 3925(a); and 907(a).

judgment of sentence. In its unpublished memorandum opinion, the Superior Court reasoned that because the jury had acquitted Appellee of robbery, the Commonwealth had failed to prove that Appellee killed the victim while in perpetration of a robbery, and thus Appellee's second-degree murder conviction could not stand. *Commonwealth v. Miller*, 988 A.2d 725 (Pa.Super.2009) (Table).

The Commonwealth filed a petition for allowance of appeal with this Court, which we granted on the following issue:

Does an acquittal of the felony upon which a second-degree murder charge is predicated necessitate reversal of the jury's second-degree murder conviction?

*Commonwealth v. Miller*, 607 Pa. 305, 5 A.3d 814 (2010).[3, 4]

The question before us implicates the general issue of inconsistent verdicts, which, under longstanding federal and state law, are allowed to stand so long as the evidence is sufficient to support the conviction. *See Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (holding that "[c]onsistency in the verdict is not necessary" and refusing to allow inconsistent verdicts to be upset by "speculation or inquiry" into the possibility of compromise or mistake on the part of the jury); *United States v. Powell*, 469 U.S. 57, 58, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (applying *Dunn*'s rule, which the Court explained as follows: "a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count"). In affirming a verdict of aggravated assault and battery, despite the jury's acquittal of the accused on a separate count of assault and battery, this Court reiterated that "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d

---

**3.** We also directed the parties to address the applicability of *Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479, 493 (2005), and *U.S. v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

**4.** The issue presented is a question of law; accordingly, our standard of review is *de novo* and our scope is plenary. *Commonwealth v. Hacker*, 15 A.3d 333, 335 (Pa.2011); *Commonwealth v. Crawley*, 592 Pa. 222, 924 A.2d 612, 614 (2007).

375, 376 (1971) (citation omitted). Rather, an acquittal of a charge for which there was sufficient evidence for conviction is an occasion of a "jury's assumption of a power which [it] had no right to exercise, but to which [it was] disposed through lenity." *Id.* (citation omitted).

In *Commonwealth v. Campbell*, 539 Pa. 212, 651 A.2d 1096 (1994), this Court relied on the reasoning of *Dunn* and *Powell* to conclude that a conspiracy conviction was valid even though the defendant's sole alleged co-conspirator had been acquitted after a joint trial. In reaching this holding, we summarized the various rationales that the *Powell* Court had advanced in support of the *Dunn* rule. First, the High Court reasoned that inconsistent verdicts "should not necessarily be interpreted as a windfall to the Government at the defendant's expense." *Powell, supra* at 65, 105 S.Ct. 471 (cited in *Campbell, supra* at 1100). Rather, the High Court determined, it was equally possible that the jury was convinced of guilt and accordingly reached a verdict of guilty on the compound offense, but "then through mistake, compromise, or lenity," reached an inconsistent verdict of acquittal on the lesser offense. *Id.* Thus, although an inconsistent verdict constitutes jury "error," it is not at all clear whether the error was made at the expense of the Government or the defendant. "Given this uncertainty, and the fact that the Government is precluded [by double jeopardy considerations] from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course." *Id.* As the High Court concluded, "the fact that the inconsistency [in the verdict] may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." *Id.*

A second factor recognized by the *Powell* Court in accepting inconsistent verdicts is the fact that "an individualized assessment of the reason for the inconsistency [either] would be based [ ] on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id.* at 66, 105 S.Ct. 471 (cited in *Campbell, supra* at 1100). Finally, the *Powell* Court noted that "a criminal defen-

dant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Id.* at 67, 105 S.Ct. 471 (cited in *Campbell, supra* at 1100–1101). Recognizing that the Government must not only convince the jury with its evidence, but also satisfy the court that the jury could rationally reach a guilty verdict given the Government's evidence, the High Court concluded that "further safeguards against jury irrationality" were not necessary. *Id.*

This Court has previously addressed the issue of inconsistent verdicts in a second-degree murder case. *See Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979) (plurality). In *Gravely,* the defendant/appellant was found guilty of second-degree murder, but the jury was unable to reach a verdict as to the predicate charge of rape. Gravely sought relief on the grounds that the verdict was inconsistent, relief that this Court denied with little discussion or analysis, simply reiterating that "consistency in a verdict . . . is not necessary." *Id.* at 1301.[5]

In *Commonwealth v. Magliocco,* 584 Pa. 244, 883 A.2d 479 (2005), this Court returned to the issue of inconsistent verdicts, this time in relation to a conviction for ethnic intimidation, 18 Pa.C.S. § 2710. At the time of the offense in *Magliocco,* the Criminal Code provided that a person was guilty of ethnic intimidation "if, with malicious intention toward the race . . . of another individual or group of individuals, he commits an offense under any other provision of this article . . . with respect to one or more members of such a group." *Magliocco, supra* at 489 (quoting 18 Pa.C.S. § 2710).[6]

5. *Gravely, supra,* was authored by then-Chief Justice Eagen, joined by Justices O'Brien and Flaherty. In separate concurring opinions, Justice Nix and Justice Roberts, who was joined by Justice Larsen, set forth their view that the appellant's issues were not preserved for review, but they did not address the issue of inconsistent verdicts. Justice Manderino dissented, based on an issue independent of the inconsistent verdict.

6. After *Magliocco* was decided, the Commonwealth Court held, and we affirmed, that the ethnic intimidation statute was unconstitutional on procedural grounds related to its enactment by the General Assembly. *See Marcavage v. Rendell,* 936 A.2d 188 (Pa.Cmwlth.2007), *affirmed,* 597

The predicate offense in *Magliocco* was terroristic threats, 18 Pa.C.S. § 2706. Following a bench trial, the defendant/cross-appellee was found guilty of ethnic intimidation but he was acquitted of terroristic threats. He appealed his conviction to the Superior Court, arguing that the evidence was insufficient to prove ethnic intimidation because the Commonwealth had not proven that he had committed the offense of terroristic threats, as evidenced by his acquittal of that offense. *Magliocco, supra* at 489. The Superior Court vacated the conviction for ethnic intimidation, holding that conviction of the predicate offense was required for conviction of ethnic intimidation, and this Court affirmed. *Id.* at 489–90.

In concluding that *Magliocco*'s ethnic intimidation conviction could not stand, we first reiterated that "a mere facial inconsistency in verdicts is not a valid basis upon which to upset a conviction which is otherwise proper, since consistency in verdicts is not required." *Id.* at 492. We also pointed out that, while the Commonwealth was not required to formally charge a defendant with the predicate offense in order to charge him or her with and secure a conviction for ethnic intimidation based upon that predicate offense, the Commonwealth did in fact charge the *Magliocco* defendant. In this "admittedly unusual" circumstance, the offense of which the defendant/cross-appellee was acquitted, *i.e.*, terroristic threats, was a specific statutory element of the offense of which he was convicted, *i.e.*, ethnic intimidation. *Id.* Noting the "special weight" that acquittals have traditionally been accorded in the law, we held as follows:

> [S]ince the factfinder in this case specifically found that Magliocco did not commit the offense of terroristic threats, the conviction for ethnic intimidation, which requires as an element the commission beyond a reasonable doubt of the underlying offense, simply cannot stand.

*Id.* Accordingly, we affirmed the Superior Court's vacatur of the *Magliocco* cross-appellee's conviction for ethnic intimidation.

Pa. 371, 951 A.2d 345 (2008). As the Superior Court has already concluded, the *Marcavage* decision does not affect our analysis in the instant case.

Most recently, in *Commonwealth v. Reed,* 607 Pa. 629, 9 A.3d 1138 (2010), this Court considered the effect of acquittal of an underlying offense in another context, to wit, the proper grading of a conviction for attempted unlawful contact with a minor, pursuant to 18 Pa.C.S. § 6318. At the time of the offense, Section 6318 provided in relevant part as follows:

§ 6318. **Unlawful contact with minor**

(a) **Offense defined.**—A person commits an offense if he is intentionally in contact with a minor for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

\* \* \* \* \* \*

(b) **Grading.**—A violation of subsection (a) is:

(1) an offense of the same grade and degree as the most serious underlying offense in subsection (a) for which the defendant contacted the minor; or

(2) a misdemeanor of the first degree; whichever is greater.

18 Pa.C.S. § 6318 (1997). Thus, grading of the offense of unlawful contact with a minor is dependent upon the underlying offense, which is the purpose for which the accused contacted the minor.

In *Reed,* the jury convicted the defendant of unlawful contact with a minor, but acquitted him of all charged underlying offenses, including attempted rape of a child and attempted involuntary deviate sexual intercourse, which are first-degree felonies; attempted statutory sexual assault, which is a second-degree felony; and attempted indecent assault, which is a first-degree misdemeanor. Concluding that Section 6318's grading scheme was not contingent upon the defendant actually being convicted of the underlying offense, the trial court relied on subsection (b)(1) and graded the defendant's conviction for attempted unlawful contact with a minor as a first-degree felony. The Superior Court vacated the judgment of

sentence. In affirming the vacatur, this Court reasoned that, while it was not incumbent upon the Commonwealth to secure a conviction of the underlying offense in 18 Pa.C.S. § 6318(a), where it chose to do so, an acquittal could not be ignored when determining the appropriate grading under subsection 6318(b). *Reed, supra* at 1147. The fact of the acquittals was afforded "special weight" by the majority, which emphasized that the jury had specifically determined that the defendant did not commit the separately charged underlying offenses. *Id.* at 1148. In light of the defendant's acquittal of all underlying charges, the sentencing court would have had "to guess which offense [the defendant] sought to commit when he contacted [the minor]," a result the majority considered absurd. *Id.* at 1147. Accordingly, the majority in *Reed* held that the default grading provision of 6318(b)(2) was applicable.

Justice Saylor authored a concurring opinion in which he expressed his unease with "the amorphous scope of the special weight afforded to acquittals, as referenced by the majority." *Id.* at 1148 (Saylor, J., concurring). Justice Saylor noted his previous identification of the "substantial tension" between allocation of a special weight to acquittals and the courts' allowance of inconsistent verdicts in the first instance. *Id.* at 1149 (citing *Magliocco, supra* at 494 (Saylor, J., concurring and dissenting)). Recognizing that *Magliocco* and the special-weight policy have altered the general rule as to allowance of inconsistent verdicts in some cases, and referencing this Court's acceptance of the appeal in the instant case, Justice Saylor suggested that "substantial uncertainty remains concerning the boundaries of the special-weight jurisprudence." *Id.*

Turning now to the instant case, the Superior Court purported to rely on *Magliocco*, as interpreted by that court in *Commonwealth v. Austin*, 906 A.2d 1213 (Pa.Super.2006), *appeal denied*, 591 Pa. 721, 920 A.2d 830 (2007), in vacating Appellee's second-degree murder conviction. Because Appellee had been acquitted of robbery, the predicate felony, the Superior Court concluded that the Commonwealth had failed to prove that Appellee killed the victim while in perpetration

of a robbery, and accordingly, his second-degree murder conviction could not stand. We hold here that the Superior Court erred by extending our holding in *Magliocco*, which was grounded in the plain text of the ethnic intimidation statute, to the offense of second-degree murder, the text and elements of which bear little resemblance to the offense of ethnic intimidation. More generally, we address the tension identified by Justice Saylor in *Magliocco* and *Reed*, and resolve it in favor of retaining the longstanding acceptance of inconsistent verdicts. Our reasoning behind this holding is as follows.

To secure a conviction for ethnic intimidation, the Commonwealth must prove that the defendant "committed" the predicate offense "with malicious intention toward the race" of an individual or group. *Magliocco, supra* at 489, 493 (quoting 18 Pa.C.S. § 2710(a)). From a plain reading of the statutory text, there is no question that the **commission** of the predicate offense is an **element** of ethnic intimidation. *Id.* at 493 (concluding that a "conviction for ethnic intimidation ... requires as an element the commission beyond a reasonable doubt of the underlying offense"). Our holding in *Magliocco* reflects our conclusion that the Commonwealth fails to prove an element of the offense of ethnic intimidation if the factfinder acquits the accused of the predicate offense.

■■■ In contrast to the ethnic intimidation statute, the second-degree murder statute does not set forth or require the commission of the predicate offense as an element. To secure a conviction for second-degree murder, the Commonwealth must prove that the defendant committed a murder **"while [he or she] was engaged ... in the perpetration of a felony."** 18 Pa.C.S. § 2502(b). "Perpetration of a felony" is statutorily defined in a very broad manner, encompassing, *inter alia,* "[t]he act of the defendant in engaging in ... the commission of, or an attempt to commit, ... robbery...." 18 Pa.C.S. § 2502(d). Based on a plain reading of this statutory language, and as the Superior Court correctly determined in *Austin, supra* at 1220, to convict an accused of second-degree murder, the Commonwealth is **not** required to prove that the accused actually committed the predicate offense.

[B]y [statutory] definition, in order to convict for felony murder it is not essential that the jury find that the predicate offense was actually completed. In effect, all the felony murder statute requires is for the jury to conclude that a criminal homicide was committed while the defendant participated in a completed or an attempted delineated, *i.e.*, predicate, offense.

*     *     *

... to the extent that felony murder does not require the commission, *i.e.*, completion, of the predicate offense, an acquittal of the predicate offense will not always mean that the homicide did not occur in the 'perpetration of a felony.' That is, the homicide could have occurred during the course of, or after, an unsuccessful attempt to commit the predicate offense. . . . . Thus, it would be possible for a felony murder to occur even though the predicate offense was not 'committed.' "

*Austin, supra* at 1220.[7]

In other words, in contrast to the crime of ethnic intimidation, second-degree murder does not require, as an element of the crime, the completion of the predicate offense. Thus, *Magliocco*, which was grounded in the delineation of the elements of ethnic intimidation set forth in the text of that statute, does not control the outcome of the instant case, where a very different statute is at issue. Accordingly, relying on the long-standing and well-established principle that consistency in a verdict is not required, we hold that Appellee's acquittal of the predicate offense of robbery does not

7. In *Austin,* as in the instant case, the Superior Court reversed the appellant's conviction for second-degree murder because he had been acquitted of the predicate offense of robbery. At least part of the Superior Court's rationale for its *Austin* holding was that the trial court had instructed the jury that "there is no such crime [as] attempted robbery." *Id.* at 1221 (quoting the trial court's instruction); *see also id.* at 1224 (Todd, J., concurring) (stating that "the jury was instructed that there was no such crime as attempted robbery, that robbery subsumed attempted robbery, or, more precisely theft," an instruction that was "not correct as a general proposition.") No jury instruction is at issue in the instant case. However, to the extent that *Austin* is in conflict with the instant opinion, it is hereby disapproved.

necessitate the vacatur of his conviction of second-degree murder. While recognizing that the jury's verdict appears to be inconsistent, we refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision. Whether the jury's verdict was the result of mistake, compromise, lenity, or any other factor is not a question for this Court to review. *See Campbell, supra* at 1100–1101 (discussing *Powell, supra*). We reaffirm that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal. Furthermore, the "special weight" afforded the fact of an acquittal plays no role in the analysis of inconsistent verdicts, because, by definition, one of the verdicts will always be an acquittal. *Magliocco* and *Reed* are distinguished by the plain text of their particular governing statutes, which controlled our disposition of those cases, but are not generally applicable to other offenses.

In *Gravely, supra,* a case decided thirty years ago as discussed above, this Court affirmed the appellant's conviction for second-degree murder even though the jury was unable to reach a verdict as to the predicate offense of rape. We reach an analogous decision today.

Order of the Superior Court is vacated. This case is remanded to the trial court for reinstatement of Appellee's conviction for second-degree murder.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and ORIE MELVIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I have difficulty with the majority's treatment of the Superior Court's decision in *Commonwealth v. Austin,* 906 A.2d 1213 (Pa.Super.2006). The majority relies on a passage from *Austin* for the proposition that, in order to obtain a felony murder conviction, the Commonwealth is not required to prove that the accused actually committed the predicate offense. *See*

Majority Opinion at 593–95, 35 A.3d at 1212–13. Yet, the import of *Austin's* rational is that the Commonwealth is, in fact, required to essentially establish the predicate offense when that offense is robbery. *See Austin,* 906 A.2d at 1220–22. To the extent that the majority is rejecting the Superior Court's reasoning on this point, I believe the rationale should be addressed on its terms, particularly because the predicate offense in this case, also, is robbery.

Indeed, I am sympathetic to the Superior Court's treatment in *Austin,* since, as I indicated in my concurring and dissenting opinion in *Commonwealth v. Magliocco,* 584 Pa. 244, 883 A.2d 479, (2005), I believe that *Magliocco's* reasoning lends itself to application beyond the scope of the ethnic intimidation statute. *See id.* at 268, 883 A.2d at 493 (Saylor, J., concurring and dissenting); *see also Austin,* 906 A.2d at 1222 ("To paraphrase the Supreme Court by substituting the relevant facts of this case, 'since the factfinder in this case specifically found that Appellant did not commit the offense of robbery, the conviction for felony murder, which requires as an element the killing while in the perpetration of a robbery, simply cannot stand.'") (citing *Magliocco,* 584 Pa. at 267, 883 A.2d at 493); *Commonwealth v. Miller,* No. JA 05–02408, *slip op.* at 14–15 (Pa.Super., Nov. 23, 2009). I support the majority's decision effectively to limit *Magliocco* to its facts, because I am not persuaded, at least at this juncture, that the practice of tolerating inconsistent verdicts should be abandoned, while, again, acknowledging that there are policy considerations on both sides of this question. *See Magliocco,* 584 Pa. at 268–70, 883 A.2d at 493–94 (Saylor, J., concurring and dissenting).