**[J-37-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

DAYLIN LEACH, MINORITY CHAIRMAN OF THE SENATE JUDICIARY COMMITTEE AND SENATOR REPRESENTING THE 17TH SENATORIAL DISTRICT, VINCENT J. HUGHES, SENATOR REPRESENTING THE 7TH SENATORIAL DISTRICT, LAWRENCE M. FARNESE, SENATOR REPRESENTING THE 1ST SENATORIAL DISTRICT, CHERELLE L. PARKER, REPRESENTATIVE FOR THE 200TH HOUSE DISTRICT, EDWARD C. GAINEY, REPRESENTATIVE FOR THE 24TH HOUSE DISTRICT, THE CITY OF PHILADELPHIA, THE CITY OF PITTSBURGH, AND THE CITY OF LANCASTER

v.

COMMONWEALTH OF PENNSYLVANIA, MIKE TURZAI, SPEAKER OF THE HOUSE OF REPRESENTATIVES, JOSEPH B. SCARNATI, PRESIDENT PRO TEMPORE OF THE SENATE, MICHAEL J. STACK, III, LIEUTENANT GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA, AND TOM WOLF, GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA

APPEAL OF:  MIKE TURZAI, SPEAKER OF THE HOUSE OF REPRESENTATIVES AND JOSEPH B. SCARNATI, PRESIDENT PRO TEMPORE OF THE SENATE

: No. 61 MAP 2015
:
: Appeal from the Order of the
: Commonwealth Court at No. 585 MD
: 2014 dated 6/25/15
:
:
:
:
: ARGUED:  March 9, 2016

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  June 20, 2016**

This direct appeal involves a challenge to the regularity of the enactment of Act 192 of 2014.  Our disposition centers on the challengers' contention that the legislation violates the single-subject rule of Article III, Section 3 of the Pennsylvania Constitution.

Act 192 began as House Bill 80 ("HB 80"), introduced in January 2013.  In its initial form, HB 80 was a two-page bill which added the newly-defined offense of theft of secondary metal – such as copper and aluminum, or wire and cable used by utilities and transportation agencies – to the Crimes Code at Section 3935.  Reflecting its limited content, the bill was titled, "AN ACT Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, defining the offense of theft of secondary metal; and prescribing penalties."  HB 80, Printer's No. 68, at 1.  After undergoing minor revisions, HB 80 was approved by the House and sent to the Senate.

The Senate Judiciary Committee added a section amending the existing trespass provision of the Crimes Code, *see* 18 Pa.C.S. §3503, to specify that an individual who trespasses in order to steal secondary metal commits a first-degree misdemeanor as a "simple trespasser."  *Id.* §3503(b.1)(1)(iv), (b.1)(2).  The committee later made an additional revision to Section 3503 defining "secondary metal" by reference to the definition contained in Section 3935 (which, as noted, sets forth the new substantive offense).  The bill's title was updated to reflect these minor revisions.  *See* HB 80, Printer's No. 4284, at 1.

Meanwhile, in April 2013, a separate House bill, HB 1243, was introduced and began proceeding through the General Assembly.  HB 1243 changed various provisions of subchapter 61(A) of the Crimes Code, that is, the Pennsylvania Uniform Firearms Act of 1995.  *See* 18 Pa.C.S. §§6101-6127 ("Firearms Act").  As amended on its second

consideration in the House, the bill retained some of its original provisions and – important to this dispute – encompassed substantial additions to Section 6120, which generally prohibits counties and other municipalities from regulating the lawful ownership, possession, transfer, or transportation of firearms and ammunition. *See* 18 Pa.C.S. §6120(a). These additions gave persons adversely affected by local gun-control laws standing to bring an action against the municipality. Further, they broadly defined "person adversely affected" to include individuals and membership organizations. *See* HB 1243, Printer's No. 4179, at 6-7 (revising 18 Pa.C.S. §6120(a.2), (b)).[1] HB 1243's title, at this juncture, read as follows:

> AN ACT Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, in firearms and other dangerous articles, further providing for Pennsylvania State Police and for limitation on the regulation of firearms and ammunition.

HB 1243, Printer's No. 4179, at 1.[2]

On October 15, 2014, HB 1243's substantive provisions were folded into HB 80, which now contained four substantive sections addressing: trespass for the purpose of unlawfully taking secondary metal from the premises; theft of secondary metal as an independent offense; state police disclosure of records; and standing for individuals or organizations to challenge local gun regulations. The bill's title was updated to read:

---

[1] HB 1243's additions to Section 6120 also included a mandatory fee-shifting provision requiring courts to award reasonable expenses where the plaintiff's challenge is determined to be meritorious or where the regulation at issue is repealed before the court reaches a final determination. *See id.* at 6 (revising 18 Pa.C.S. §6120(a.3)).

[2] The title mentioned the state police in reference to a section of the bill requiring the agency to send the federal government certain mental-health records which could affect a person's ability to possess firearms under federal law. *See id.* at 5 (altering Section 6111.1 of the Firearms Act, 18 Pa.C.S. §6111.1); 18 U.S.C. §922(g)(3), (4).

AN ACT Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, in burglary and other criminal intrusion, further providing for the offense of criminal trespass; defining the offense of theft of secondary metal; prescribing penalties; and, in firearms and other dangerous articles, further providing for Pennsylvania State Police and for limitation on the regulation of firearms and ammunition.

HB 80, Printer's No. 4318, at 1. Shortly after the merger, both Houses of the General Assembly approved HB 80 in its final form. The bill became Act 192 when then-Governor Tom Corbett signed it into law on November 6, 2014.

Appellees – the cities of Philadelphia, Pittsburgh, and Lancaster, as well as several legislators who had voted against HB 80 – filed a petition for review in the nature of a complaint in equity in the Commonwealth Court's original jurisdiction, naming the Commonwealth, the Governor, the Lieutenant Governor, and the Speaker of the House as respondents. The President *pro tempore* of the Senate was permitted to intervene as an additional respondent.[3]

In their complaint, Appellees asked the court to invalidate Act 192 on the basis that it violates Article III, Sections 1 and 3 of the state charter and to enjoin the Commonwealth from enforcing its provisions. *See* PA. CONST. art. III, §§1, 3 (stating, respectively, that "no bill shall be so altered or amended, on its passage through either House, as to change its original purpose[,]" and "[n]o bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof"). As to Section 1, Appellees alleged that the act's original purpose was to create criminal penalties for the theft of secondary metal, and its purpose was later altered to include topics pertaining to state police reporting requirements and the creation of a new right of action against municipalities by individuals and organizations affected by local gun-control

---

[3] The House Speaker and the Senate President *pro tempore*, appellants herein, will be referred to as the "legislative leaders."

laws. They alleged that they were harmed by the manner in which this change was made late in the legislative process so that they, and the public, did not have adequate time to consider and comment on HB 80 in its final form. With regard to the Section 3 claim, Appellees stated that HB 80 contained more than one subject, thus depriving the General Assembly of the ability to vote with circumspection on its separate and unrelated provisions.

The legislative leaders filed preliminary objections in the nature of a demurrer, the Commonwealth filed preliminary objections asserting sovereign immunity, and the Governor filed preliminary objections stating that no cognizable claim had been raised against him. The Commonwealth Court approved the parties' stipulation to discontinue the matter as to the Commonwealth and the Governor, and it granted the Lieutenant Governor's request to be dismissed as a respondent, leaving the legislative leaders as the sole remaining respondents. Meanwhile, Appellees had moved for summary relief pursuant to appellate rule 1532(b). *See* Pa.R.A.P. 1532(b) (allowing the court to enter judgment "if the right of the applicant thereto is clear").

With the parties' cross-dispositive motions pending, the court granted Appellees' request for summary relief, dismissed the legislative leaders' demurrer as moot, and declared Act 192 unconstitutional. *See Leach v. Commonwealth*, 118 A.3d 1271 (Pa. Cmwlth. 2015) (*en banc*). As to the single-subject requirement, the majority concluded that setting forth criminal penalties for the theft of copper and aluminum could not be considered within the same subject as the creation of a civil cause of action to challenge municipal firearms legislation. *See id.* at 1283.

The majority initially discussed the multiple purposes of the single-subject rule, including the curtailment of disfavored legislative practices such as logrolling and the inclusion at the last minute of unrelated provisions, as well as promotion of efficiency in

the legislative process. *See id.* at 1279. *See generally City of Phila. v. Commonwealth*, 575 Pa. 542, 573-75, 838 A.2d 566, 585-86 (2003).[4] The opinion then moved into the application of the "germaneness" test which has come to characterize the judicial review of single-subject challenges. In doing so, the majority provided an extensive discussion of this Court's decisions in *City of Philadelphia*, *Pennsylvania State Ass'n of Jury Commissioners v. Commonwealth*, 619 Pa. 369, 64 A.3d 611 (2013), and *Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013), all of which sustained single-subject challenges. *See Leach*, 118 A.3d at 1280-82.

From these decisions, the Commonwealth Court majority framed the essential inquiry as determining whether the various subjects contained within the enactment under review "have a nexus to a common purpose," or "are part of 'a unifying scheme to accomplish a single purpose.'" *Id.* at 1282 (quoting, indirectly, *City of Phila.*, 575 Pa. at 579, 838 A.2d at 589). Applying this test, the majority found that the primary subjects covered by Act 192 – including, on the one hand, criminal penalties for theft of copper and aluminum and, on the other hand, the creation of a civil cause of action to challenge municipal firearms legislation – were so disparate as to lack any clear, common nexus.

---

[4] The single-subject rule also serves two other purposes. Related to the above, it "free[s] legislators from the burden of voting for unpalatable measures in order to achieve the passage of favored ones." Justin W. Evans & Mark C. Bannister, *The Meaning and Purposes of State Constitutional Single Subject Rules: A Survey of States and the Indiana Example*, 49 Val. U. L. Rev. 87, 154 (2014). Also, except with respect to appropriation bills where the governor may exercise a line-item veto, *see* Pa. Const. art. IV, §16, the rule protects the integrity of the Governor's veto power by aiding the governor's ability to veto or approve measures based on their individual merit. *See City of Phila.*, 575 Pa. at 575 n.18, 838 A.2d at 586 n.18. *But cf.* Michael D. Gilbert, *Single Subject Rules and the Legislative Process*, 67 U. Pitt. L. Rev. 803, 847-48 (2006) (commenting upon the governor's influence on the legislative process and observing that the single-subject rule impedes executive-orchestrated log rolls).

*See id.* at 1283. Thus, the majority discerned no single unifying subject to which all of Act 192's subjects were germane.

The majority also disagreed with the legislative respondents that a unifying theme of "amending the Crimes Code" would suffice. In this regard, the majority likened this theme to the overly broad ones which were rejected by this Court in *City of Philadelphia*, *Jury Commissioners*, and *Neiman*. *See id.* at 1283; *cf. Marcavage v. Rendell*, 936 A.2d 188, 193 (Pa. Cmwlth. 2007) (*en banc*) (reasoning that "to conclude that the General Assembly could initiate a piece of legislation in the context of the Crimes Code and rely upon that concept as a unifying justification for amendments to bills under the Crimes Code that contain no nexus to the conduct to which the original legislation was directed would stretch the Supreme Court's meaning of 'reasonably broad terms'" (quoting *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 318, 877 A.2d 383, 409 (2005) ("PAGE"))), *aff'd per curiam*, 597 Pa. 371, 951 A.2d 345 (2008) (adopting the Commonwealth Court's opinion). Additionally, the majority rejected a posited theme of "regulation of firearms or the ability to own a firearm," as it failed to discern how this supplied an essential unifying subject as between criminal penalties for theft of metals and civil suits "through which an expansive class of parties may seek to invalidate municipal firearms legislation[.]" *Leach*, 118 A.3d at 1283; *accord id.* at 1284 ("The distinctions between criminal and civil remedies, between individual and municipal conduct, and between theft and enacting firearms regulation are so pronounced that they confound every effort to focus on a unifying theme.").[5]

---

[5] In terms of the original-purpose rule, the majority made this same comparison, indicating that, whereas the initial purpose was to criminalize the theft of secondary metal, the final purpose pertained, as well, to the "vastly different activit[y]" of prosecuting lawsuits against municipalities in relation to their gun ordinances. *Id.* at (continued…)

Judge McCullough filed a concurring and dissenting opinion focusing primarily on precedent. She opined that, under *Ritter v. Commonwealth*, 120 Pa. Cmwlth. 374, 548 A.2d 1317 (1988), *aff'd per curiam*, 521 Pa. 536, 557 A.2d 1064 (1989) – which, she noted, has never been overruled – Act 192 comported with the single-subject requirement.[6] However, she concluded that it failed the original-purpose test in light of *Marcavage*, in which the court found an Article III, Section 1 violation where a bill initially defined the offense of agricultural crop destruction but was later amended to, instead, expand the scope of the crime of ethnic intimidation. *See Marcavage*, 936 A.2d at 193-94. Overall, Judge McCullough expressed her concern that:

> Under the Majority's analysis, it is unclear how our legislature can amend the Crimes Code to comport with both the single-subject and original purpose rules: just amending one crime at a time; just amending the same type of crimes (*e.g.*, property offenses, offenses against the person, etc.); just amending the penalties and/or the elements of all crimes; just creating new crimes; just amending collateral measures for certain and/or all kinds of crimes; or some combination of the above? Obviously, the legislature needs a degree of flexibility to amend the Crimes Code in an efficient and effective manner . . ..

*Leach*, 118 A.3d at 1291 (McCullough, J., concurring and dissenting).

Presently, the legislative leaders argue that the Commonwealth Court majority erred in finding a single-subject violation because Act 192 is limited to the subject of

---

(…continued)
1288. Accordingly, the court found that Act 192 violated Article III, Sections 1 and 3. *See id.* at 1288-89.

[6] The statute upheld in *Ritter* made Crimes Code amendments which: gave district attorneys certain procedural rights in the context of prisoner litigation; augmented penalties for underage drinking and the sale of alcohol to minors; enhanced penalties for drug trafficking to minors; provided penalties for the scattering of rubbish; and regulated matters relating to the performance and funding of abortions. *See Ritter*, 120 Pa. Cmwlth. at 376, 548 A.2d at 1318.

amending the Crimes Code. They observe that *Ritter*, which also involved disparate Crimes Code amendments, has never been overruled or otherwise disapproved. Recognizing that *Ritter* was decided before *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566 (2003), the legislative leaders also draw support from two post-*City of Philadelphia* decisions.

The first is *Spahn v. Zoning Board of Adjustment*, 602 Pa. 83, 977 A.2d 1132 (2009), in which this Court considered a statute that amended the First Class City Home Rule Act in two discrete ways by increasing penalties for Philadelphia Code violations and altering the rules governing standing to lodge a zoning appeal in Philadelphia; *Spahn* concluded that the bill related "to the single topic of Philadelphia home rule government, seeking to amend one thing – the Home Rule Act." *Id.* at 110, 977 A.2d at 1148. The second case is *Washington v. DPW*, 71 A.3d 1070 (Pa. Cmwlth.) (*en banc*), *aff'd per curiam*, 621 Pa. 191, 76 A.3d 536 (2013). In that decision, the *en banc* Commonwealth Court upheld an enactment with sections affecting numerous health and human services programs in both the Public Welfare Code and the Mental Health Code. The court reasoned that all such programs "can be unified under the theme of improving the effectiveness and efficiency of the delivery of human services programs to people in need," and that such programs "work together like parts of a single machine." *Id.* at 1082.

The legislative leaders proffer that the Crimes Code can be described in similar terms (*i.e.*, as a "single machine"), especially those aspects of the Code which were amended by Act 192. *See* Brief for Appellants at 20. As an example, they contend that the act grades criminal trespass for the purpose of stealing secondary metal as a first-degree misdemeanor, meaning that a person convicted of such offense would lack standing to bring a claim against a municipality under Section 6120(a.2) because he or

she would not be allowed to own a firearm under federal law and, as such, would not be affected by local gun laws.[7]  In this latter respect, the legislative leaders also suggest that, if revising the Crimes Code is too broad a topic, all of the act's provisions fit within the narrower subject of amending portions of the Crimes Code "that involve the regulation of firearms or the ability to own a firearm."  *Id.* at 17.

Finally, the legislative leaders offer that the purpose of Article III, Section 3 – to ensure that legislation is voted on with circumspection – was not undermined in the present case as there was an open and lively debate among legislators before the final bill was voted.  Therefore, the legislative leaders couch Appellees' action in challenging the legislation as attempting to attain through the courts what they were unable to achieve legislatively.

The National Rifle Association of America and the Firearm Owners Against Crime, as *amici curiae* supporting reversal, have filed a joint brief contending that the Commonwealth Court used an overly-superficial analysis by focusing on the mixing of criminal and civil provisions, whereas the theme which unifies all of Act 192's provisions is the strengthening of penalties within the Crimes Code so as to deter certain conduct.  They indicate that individuals who commit the offenses addressed in the act face stiffer penalties upon conviction, and municipalities that violate Pennsylvania's longstanding firearms preemption law also face enhanced penalties as the result of a successful challenge.  Overall, *amici* maintain that the Commonwealth Court was insufficiently deferential to the legislative prerogatives of the General Assembly.

Appellees initially criticize the legislative leaders to the degree they rely on cases decided before *City of Philadelphia*, a decision Appellees describe as a "watershed"

---

[7] The legislative leaders do not identify any aspect of federal law to support this argument.

ruling reasserting the judiciary's "role in preserving constitutional order." Brief for Appellees at 20. They observe that, since *City of Philadelphia* was decided, this Court has invalidated bills based on a single-subject violation on more than one occasion.[8] Further, Appellees posit that the process by which Act 192 was passed exemplifies the circumstances that the single-subject rule was intended to curtail, as HB 80 was a non-controversial bill relating to the theft of copper and aluminum for all but the last few hours of its existence; then, for reasons of expediency, it was merged with an unrelated and controversial bill dealing with gun-control regulations in the final hours of a legislative session with a looming change in the Governor's office. *See id.* at 24-25.

As to the single-subject inquiry itself, Appellees argue that the fact that Act 192's provisions all revise aspects of the Crimes Code is a mere formality based on the number assigned by the Legislative Reference Bureau to the codified title. They assert that "crimes" is as broad as other proposed unifying topics rejected by this Court – such as "municipalities" in *City of Philadelphia*, "powers of county commissioners" in *Jury Commissioners*, and "judicial remedies and sanctions" or "refining civil remedies or relief" in *Neiman* – and that Act 192 does not relate solely to crimes in any event. In this respect, Appellees contend it is "fanciful" to suggest that Section 6120(a.2), which authorizes civil actions to challenge municipal legislation, pertains to the topic of crimes. *Id.* at 29 n.5.

---

[8] *See id.* at 22 (citing *Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013) (invalidating a statute which made changes to the Judicial Code, including revisions to Megan's Law and provisions relating to deficiency judgment procedures, the jurisdiction of county park police, and the statute of limitations for asbestos-related claims); *Pa. State Ass'n of Jury Comm'rs v. Commonwealth*, 619 Pa. 369, 64 A.3d 611 (2013) (striking down legislation that regulated surplus farm equipment and products, and allowed certain counties to eliminate the position of Jury Commissioner)).

Finally, Appellees take issue with the legislative leaders' fallback position that the act's unifying subject is amending aspects of the Crimes Code that involve the regulation of firearms or the ability to own a firearm. They maintain that theft of secondary metal cannot properly be viewed as a firearms offense and that the legislative leaders' suggestion along these lines comprises a *post hoc* attempt to make an "abstruse connection" between the act's parts. *Id.* at 31. Appellees urge this Court not to resolve the single-subject issue on such grounds, particularly as the rule is intended to promote a transparent process whereby the relationship between different portions of a bill are evident to other legislators and the public generally. *See id.*[9]

The historical background and purposes of Article III, Section 3 are now well traveled in our cases and will not be repeated here. Thus, we are left simply to apply the prevailing germaneness test. In doing so, we find ourselves in agreement, in all material respects, with the Commonwealth Court.

Like the Commonwealth Court, we respectfully disagree with the legislative leaders to the extent they suggest Act 192 passes single-subject scrutiny because all of its provisions amend aspects of the Crimes Code. As that court and Appellees have observed, this Court has rejected similarly broad proposed topics centering on an entire title of Pennsylvania statutory law. *See, e.g.*, *Neiman*, 624 Pa. at 70, 84 A.3d at 612 ("[T]he mere fact that a piece of legislation amends a particular title of the Pennsylvania Consolidated Statutes . . . or amends a particular article of a codified body of statutes

---

[9] Several *amici* have filed briefs supporting affirmance, including the City of Harrisburg, CeaseFirePA, and the Pennsylvania Coalition of Mayors Against Illegal Guns. Some of their arguments question the wisdom of, or need for, Act 192. Such issues are not relevant to judicial review of a statute's constitutional validity. *See PAGE*, 583 Pa. at 288, 877 A.2d at 390-01. *See generally Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 593 Pa. 184, 192, 928 A.2d 1013, 1017-18 (2007) (delineating the different functions of the legislative and judicial branches).

such as the County Code . . . will not automatically fulfill the requirements of Article III, Section 3[.]"); *City of Phila.*, 575 Pa. at 580, 838 A.2d at 589 (rejecting "municipalities" as a unifying topic, since "'municipalities' is the subject of an entire Title of the Pennsylvania Consolidated Statutes"). The scope of the Crimes Code is similarly broad. It contains dozens of chapters which, among other things, define crimes and defenses, set penalties, establish victims' rights and civil remedies, and regulate criminal history records. Insofar as the Commonwealth Court's *Ritter* decision may be read to suggest otherwise, *see supra* note 6, it is disapproved.

We also find that the legislative leaders cannot prevail on their alternative theory that the act encompasses the subject of Crimes Code amendments involving the regulation of firearms or the ability to own a firearm. If this were Act 192's overall subject, we discern no reasonable basis to include provisions defining the offenses of theft of secondary metal or trespass for the purpose of stealing secondary metal. Even if we accept, *arguendo*, that a conviction of such offenses may impinge upon the defendant's ability to own a firearm under federal law, any connection to firearms predicated on that basis is simply too indirect and attenuated to allow the secondary-metal offenses reasonably to fall within the proposed subject.

Indeed, the manner in which the General Assembly fashioned the title of the act illustrates the point. The title begins by stating that the act amends the Crimes Code in regard to criminal trespass and theft of secondary metal (and their associated penalties). It continues: "and, in firearms and other dangerous articles, further providing for . . . limitation on the regulation of firearms and ammunition." Thus, the topic of limitations on local gun laws is set off from the offenses encompassed within the act, and it is only these municipal limitations that are stated to be relevant to firearms and other dangerous articles. The title, therefore, does not suggest that theft of

secondary metal and criminal trespass to steal secondary metal were understood by the Legislature as relating in any direct way to the regulation of firearms or the ability to own a firearm.

As a final matter, we note that the above analysis is not intended to reflect a judicial evaluation of the wisdom or permissibility of legislative bargaining or deal-making. *See generally* Gilbert, *Single Subject Rules and the Legislative Process*, 67 U. PITT. L. REV. at 829-33 (expressing that logrolling which spans multiple bills can occur and can at times be socially beneficial). Our sole concern is whether Act 192 comports with Article III, Section 3's mandate that each bill contain but one subject. For the reasons given, we hold that it does not satisfy that requirement. As the Commonwealth Court suggested, creating a civil cause of action for persons affected by local gun regulations is simply too far afield from the definition of new offenses relating to the theft of secondary metal to be considered part of one subject under Article III, Section 3.[10]

Based on the foregoing, Act 192 violates the single-subject rule and must be declared void in its entirety. *See, e.g.*, *Neiman*, 624 Pa. at 73-74, 84 A.3d at 615 (recognizing that, where an act violates the single-subject rule, "it would be arbitrary to preserve one set of provisions germane to one topic, and invalidate the remainder of the bill" (internal quotation marks and citation omitted)). In light of our holding, moreover, there is no need to reach Appellees' separate claim that the enactment violates the original-purpose requirement of Article III, Section 1.

The order of the Commonwealth Court is affirmed.

---

[10] With reference to Judge McCullough's dissent, one of the ongoing difficulties in this line of cases is that the maintenance of a reasonability test – in furtherance of the accordance of deference to a coordinate branch of government within its own core arena of lawmaking – necessarily yields some uncertainty as to the boundaries. These, by necessity, are continuing to be fleshed out in the cases as they arise.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.

Former Justice Eakin did not participate in the consideration or decision of this case.