J-A15013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF: M.A., A JUVENILE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  M.A., A JUVENILE | No. 1450 EDA 2013 |

Appeal from the Dispositional Order May 3, 2013
In the Court of Common Pleas of Montgomery County
Juvenile Division at No(s): CP-46-JV-0000570-2012

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.:                    **FILED JULY 29, 2014**

Appellant, M.A., a juvenile, appeals from the dispositional order entered May 3, 2013, after the juvenile court adjudicated him delinquent for committing harassment[1] and ethnic intimidation.[2]  We affirm.

In March, 2013, Appellant and J.L. (the "victim"), were both students in the 9th grade at Perkiomen Valley High School.  On March 15, 2013, Appellant came into health class with three swastikas drawn on his left hand and sat down next to the victim, who is Jewish.  Thereafter, the victim left to go to the bathroom.  When the victim returned, he observed that someone had drawn swastikas on every page of his health class packet.  When confronted by school officials, Appellant admitted that he drew the swastikas

_____

[1] 18 Pa.C.S.A. § 2709(a)(4).
[2] 18 Pa.C.S.A. § 2710.

on the victim's health packet. Appellant further acknowledged that he was aware that the swastika was the symbol used by Adolf Hitler and that it was used during a period in which millions of Jewish people were killed, but that he had forgotten the victim was Jewish. Appellant received a 5-day in-school suspension because of the incident. On the first day of the in-school suspension, school officials called the state police because students began to harass the victim.

On March 27, 2013, Appellant was charged with ethnic intimidation, criminal mischief,[3] and two counts of harassment. On March 29, 2013, a detention hearing was conducted, after which the juvenile court judge determined that Appellant was a danger to the community and ordered him detained pending the adjudication hearing. On April 12, 2013, an adjudication hearing was conducted, after which the juvenile court adjudicated Appellant delinquent on the charges of harassment and ethnic intimidation. This timely appeal followed.

On appeal, Appellant raises the following issues for our review:

Did the juvenile court judge presiding over the juvenile's detention hearing violate the juvenile's due process rights by announcing in open court that she was Jewish and proceeded to find the juvenile a "threat to the community" for drawing a swastika on a classmate's health class paper?

_____

[3] 18 Pa.C.S.A. § 3304.

> Did the juvenile court err when it denied the juvenile the opportunity to present the complainant's prior school adjudication and sanctions for lying to challenge his credibility?
>
> Is the juvenile court's adjudication of the juvenile appellant as delinquent with respect to the offences of ethnic intimidation and harassment supported by legally sufficient evidence of record?

Appellant's Brief at 4.

Appellant first claims that the juvenile court judge violated his due process rights when she announced in open court that she was Jewish and proceeded to detain Appellant prior to his adjudication hearing.[4] Appellant claims that the court's comments raised the appearance of bias towards him and that his "procedural due process right to a neutral and impartial hearing officer were [sic] violated." Appellant's Brief at 22.

Preliminarily, we note that Appellant did not raise an objection to the juvenile court's comments either at the time they were made during the detention hearing or in the Motion for Reconsideration of Child's Detention Status filed April 2, 2013. Rather, he raises this claim for the first time on appeal. Pennsylvania Rule of Appellate Procedure 302(a) provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "Indeed, even issues of

_____

[4] Appellant's argument in this regard is confusing in that although he repeatedly challenges his detention, he assures this Court in a footnote that he "is not challenging the evidentiary support for Judge Demchick-Alloy's detention decision at this stage in the proceedings." Appellant's Brief at 19 n.2. We therefore limit our discussion of this issue to that of the juvenile court's alleged bias.

constitutional dimension cannot be raised for the first time on appeal."
***Coulter v. Ramsden***, --- A.3d ---, ---, 2014 WL 2787216 at *8 (Pa. Super.,
filed June 20, 2014) (citation omitted).  As Appellant failed to raise his claim
of alleged juvenile court bias and deprivation of due process rights in the
court below, we are constrained to conclude that this issue is waived.

Even if we were to address this issue, however, it would not merit
relief.  Appellant's argument analyzes the juvenile court's comments in
isolation.  When considered in context, the court's comments evince no bias
or prejudice:

> So, at the end of the day, when all the facts come out from both
> sides – your lawyer says you have a defense, so that'll play out.
> But I'm basing my opinion on the allegation of probable cause.
> You should only know, really know about the Holocaust and to
> really learn the harm you're causing by drawing that sign, and
> drawing it and bringing it to bear with respect to someone who
> has suffered in their heritage.  *And this isn't about me being
> Jewish.  I am Jewish.  But I don't have to be Jewish.*  There were
> millions of people that were not Jewish that were devastated by
> the Holocaust, murdered, slaughtered, and affected and
> impacted by the Holocaust.  *So this isn't about my heritage or
> my taking it out on you because I'm Jewish*.  *Not at all.*

N.T., Detention Hearing, 3/29/13 at 18-19 (emphasis added).  Clearly, the
juvenile court judge took great pains to make it clear that her heritage was
not a factor in detaining Appellant.  There is simply no evidentiary support
for Appellant's contention otherwise.  This issue is wholly without merit.

Appellant next argues that the juvenile court erred in granting the
Commonwealth's motion to preclude defense counsel from using J.L.'s school
disciplinary record for impeachment purposes pursuant to Pa.R.E. 608(b)(1).

Appellant's Brief at 30. The discipline incident list allegedly indicated that J.L. was disciplined for "lying." *Id*.

"The [a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *In re F.P.*, 878 A.2d 91, 93 (Pa. Super. 2005) (citation omitted). Pennsylvania Rule of Evidence 608(b)(1) provides that "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct" except as provided in Pa.R.E. 609 (relating to evidence of conviction of crime). Pa.R.E. 608(b)(1).

Appellant argues that while the high school disciplinary report constitutes a specific instance of J.L.'s conduct precluded under Rule 608(b)(1), the juvenile court should have admitted the report under Rule 609. Rule 609(a) states that: "For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement." Under Rule 609(d), "evidence of the adjudication of delinquency for an offense under the Juvenile Act … may be used to impeach the credibility of a witness if conviction of the offense would be admissible to attack the credibility of an adult." Pa.R.E. 609(d).

In essence, Appellant would have us equate a disciplinary action for lying initiated by a school administrator to an adjudication of delinquency for

- 5 -

an offense involving dishonesty or false statement.   This argument is meritless on its face.  Rule 609 clearly limits the type of evidence with which it is permissible to impeach a witness's credibility to *convictions* or *adjudications of delinquency*.  ***See***, ***e.g.***, ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501, 534-534 (2005) (trial court properly precluded defense from questioning witness on a burglary he had admitted committing, but for which he was never convicted).   The use of any other specific instance of conduct for impeachment purposes is strictly prohibited under Pa.R.E. 608(b)(1).  Appellant cannot and does not seriously argue that a high school disciplinary report constitutes either a conviction or adjudication of delinquency.  Therefore, the trial court properly precluded the introduction of the report for impeachment purposes.

Appellant alternatively argues that the juvenile court's ruling "unduly abridged his constitutional right to confront and cross-examine adverse witnesses…."  Appellant's Brief at 37.  Appellant provides no support for the paradoxical proposition that the exclusion of patently inadmissible evidence constitutes a violation of his constitutional rights.   We decline to countenance such a notion here.

Lastly, Appellant argues that there was insufficient evidence to support his adjudication of delinquency on the charges of harassment and ethnic intimidation.  Appellant's Brief at 39.  Our standard of review is as follows:

> When a challenge to the sufficiency of the evidence is made, our task is to determine whether the evidence and all reasonable inferences drawn therefrom, when viewed in the light most

favorable to the Commonwealth as the verdict winner, were sufficient to enable the fact-finder to find every element of the crime charged beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Moreover, we must defer to the credibility determinations of the [juvenile] court, as these are within the sole province of the finder of fact. The trier of fact, while passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence.

*In re J.M.*, 89 A.3d 688, 691 (Pa. Super. 2014) (citation omitted).

The Crimes Code defines the offense of harassment, as is relevant to this case, as follows:

A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person: … (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]

18 Pa.C.S.A. § 2709(a)(4). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted)

It is undisputed that Appellant drew the swastikas on J.L.'s school papers. It is also apparent that, in this context, the swastika was utilized as a threatening symbol to an individual of the Jewish faith.[5] Appellant testified that he learned about the Holocaust and Adolf Hitler's hatred for Jews in

_____

[5] Appellant claims that the swastika is not a threatening symbol but is merely "offensive and distressing … bringing to mind the persecution and genocide suffered by the Jewish people at the hands of" the Nazis. Appellant's Brief at 45. Such a claim not only beggars belief, but also is completely disingenuous. Notably, Appellant offers no explanation for drawing the symbol on the victim's school papers.

school in September 2012. The principal at Perkiomen High School testified that Appellant told her following the incident that he was aware the swastika was a symbol of the Nazi Party and that millions of Jewish people were killed under Nazi rule. *Id*. at 15. Thus, Appellant knew of the history of the swastika and communicated to the victim the threatening drawing. Additionally, the totality of the circumstances permits the inference that Appellant drew the swastikas on J.L.'s health packet with the intent to harass, annoy or alarm the victim. The victim testified that in December 2012 the Appellant looked at him and spat on the floor of the classroom during a discussion of Hanukkah in English class. *Id*. at 39-40. This testimony not only establishes that Appellant was aware that J.L. was Jewish, but is also suggestive that he harbored animosity towards the Jewish faith and J.L. in particular.[6] Based on the foregoing, we do not hesitate to find the evidence was sufficient to support the adjudication of harassment.

We are likewise unpersuaded by Appellant's challenge to the adjudication of ethnic intimidation. Section 2710 of the Criminal Code

_____

[6] Although Appellant offered testimony contrary to that of the victim at the adjudication hearing, we reiterate that the juvenile court was free to believe all, part, or none of the evidence, and we must defer to the court's credibility determinations. ***See In re B.T.***, 82 A.3d 431, 435 (Pa. Super. 2013) (where "the juvenile court's factual finding is based upon its credibility determinations and is supported by the record," that "finding will not be disturbed on appeal").

- 8 -

provides that a person is guilty of ethnic intimidation "if, with malicious intention toward the race ... of another individual or group of individuals, he commits an offense under any other provision of this article ... with respect to one or more members of such a group." 18 Pa.C.S.A. § 2710. "To secure a conviction for ethnic intimidation, the Commonwealth must prove that the defendant 'committed' the predicate offense 'with malicious intention toward the race' of an individual or group." *Commonwealth v. Miller*, 613 Pa. 584, 594, 35 A.3d 1206, 1212 (2012). In this regard, Appellant argues only that if the adjudication for the predicate offense – here, harassment – cannot stand, than the ethnic intimidation adjudication must also fail. As we have already determined that the adjudication of harassment was proper, this claim fails.

Dispositional order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2014