J-A09045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALBERT BRINKLEY | |
| Appellant | No. 2256 EDA 2013 |

Appeal from the Judgment of Sentence entered May 31, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0014120-2011

BEFORE:  BOWES, DONOHUE, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                          **FILED JULY 10, 2015**

Appellant, Albert Brinkley, appeals from the judgment of sentence the Court of Common Pleas of Philadelphia County entered May 31, 2013.  On appeal, Appellant argues the evidence was insufficient to support his second degree murder, robbery, and possessing an instrument of crime convictions. We disagree.  Accordingly, we affirm.

The relevant facts and procedural history can be summarized as follows:

> [O]n April 2, 2011, at approximately 4:40 P.M., [Police Officer Candice McCoy] went to the Busti Housing Project at 46[th] and Market Streets in Philadelphia in response to a radio call.  A black Pontiac Bonneville was in the eastbound lane with the engine running.  The driver's side door was slightly open and the front passenger's side window was shattered.  Two (2) black males discovered in the vehicle had been shot multiple times. The male sitting in the front passenger's seat was unresponsive.

The male sitting in the driver's seat was complaining of pain in his legs. The medic unit arrived and transported the males to the hospital. The male [who] had been sitting in the passenger's seat, later identified as Quince Morant [(Morant)] . . ., was pronounced dead on arrival. The other male, later identified as Sharad DuBose [(DuBose)], received treatment for his injuries.

Trial Court Opinion, 5/29/14, at 2.

Following the shooting, the police interviewed several individuals, including DuBose, Consuelo Matthews, Jerome Boyd, John Ashmore, and Ivory Matthews, who provided written statements incriminating Appellant as involved in the shooting. In essence, these witnesses stated that Appellant, along with codefendant, robbed Morant and DuBose, in the course of which they killed Morant and injured DuBose. At trial, however, with one exception (Consuelo Matthews),[1] all of the witnesses distanced themselves from the prior statements they gave to the police, denying making any statement to the police (DuBose), not recalling signing any statement (Boyd), not recalling what information was provided to the police (Ashmore), disputing the accuracy of the statement (Ivory Matthew), or claiming not to have signed all pages of the statement (Ivory Matthew).

On May 31, 2013, [Appellant] was found guilty by a jury of [m]urder of the [second] [d]egree; . . . two (2) counts of [r]obbery; and, [p]ossession of an [i]nstrument of [c]rime. He was sentenced that same day to [l]ife without possibility of parole for the [m]urder conviction and up to five (5) years for the [r]obbery convictions. All sentences to run concurrently.

_____

[1] At trial, Consuelo Matthews, "confirmed that most of [her] statement was accurate. However, she testified that she did not tell [detectives] that [Appellant] took Ebony into the bathroom with him." *Id.* at 4.

- 2 -

On June 21, 2013, [Appellant] filed a [p]ost [s]entence [m]otion that was denied on August 1, 2013, without a hearing.

On August 1, 2013, trial counsel was permitted to withdraw and appellate counsel was appointed.

Trial Court Opinion, 5/29/14, at 1 (footnote omitted). This appeal followed.

On appeal, Appellant raises the following issues for our review:

I. Was the evidence sufficient to establish beyond a reasonable doubt that [A]ppellant committed the offense of [second degree] murder?

II. Was the evidence sufficient to establish beyond a reasonable doubt that the [A]ppellant committed two robbery offenses?

III. Was the evidence sufficient to establish that [Appellant] possessed an instrument of crime?

Appellant's Brief at 2.

"In sufficiency review, we are obliged to determine whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to satisfy all elements of the offense beyond a reasonable doubt." **Commonwealth v. Johnson**, 42 A.3d 1017, 1025 (Pa. 2012) (quotation marks and citations omitted).

"To secure a conviction for second-degree murder, the Commonwealth must prove that the defendant committed a murder while [he or she] was engaged . . . in the perpetration of a felony." 18 Pa.C.S. § 2502(b) (internal quotation marks omitted). "'Perpetration of a felony' is statutorily defined in a very broad manner, encompassing, *inter alia,* '[t]he act of the defendant in

engaging in . . . the commission of, or an attempt to commit, . . . robbery . . . .' 18 Pa.C.S. § 2502(d)." ***Commonwealth v. Miller***, 35 A.3d 1206, 1212 (Pa. 2012).

A person commits robbery if, "in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) [or] commits or threatens immediately to commit any felony of the first or second degree." 18 Pa.C.S.A. § 3701(a)(1)(i)-(iii). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." ***Id.*** at § 3701(a)(2).

Finally, a person is guilty of possessing instruments of crime "if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally." 18 Pa.C.S.A. § 907.

The trial court, applying the proper standard of review, concluded as follows:

> The evidence, viewed in the light most favorable to the Commonwealth, consisted of the eyewitness account of John Ashmore. In his initial statement to detectives, he indicated that he saw [Appellant] start shooting with a "long" silver and black handgun at the car in which the [victim] and DuBose were sitting. After the shooting, he saw [Appellant] reach inside the car and take something from the car. Ashmore went into the 400 building after [Appellant] and up to Consuelo Matthews' apartment where he saw [Appellant], who had changed his clothes, in the bathroom talking to Ebony Matthews. Ashmore told the detectives that he told Consuelo, Ebony and Ivory what he saw regarding the shooting. He identified a photo of [Appellant], who he has known all his life. At trial, although Ashmore acknowledged that he and his mother signed his

statement, he denied making the statement. Since Ashmore testified at trial, his statement was signed by him and he was cross-examined about his prior statement, his statement was admissible as substantive evidence. Therefore, the jury was free to believe all, some or none of what was in his initial statement.

Commonwealth witness Jerome Boyd acknowledged that he gave a statement to detectives and recognized his signature on his statement: however, at trial, he testified that he did not recall being at the Busti projects on the day of the shooting or recall seeing [Appellant] or [codefendant] on the day of shooting.

In his statement to [detectives] on May 4, 2011, Boyd indicated on the day of the shooting [Appellant] came to his apartment and said to him, "we need the gun". Boyd retrieved a blue bag from his bedroom containing a nickel plated 9 millimeter gun with a black handle that [codefendant] had given him one week before and asked him to hold it for him. Approximately twenty-five (25) minutes after giving [Appellant] the gun, he heard between ten to fourteen gunshots coming from outside the building. As stated supra, since Boyd testified at trial, his statement was signed by him and he was cross-examined about his prior statement, his statement was admissible as substantive evidence. Therefore, the jury was free to believe all, some or none of what was in his initial statement.

Commonwealth witness Consuelo Matthews' testimony corroborated Ashmore's statement. She testified that on the day of the shooting she was in her apartment with Ebony, Ivory, her fiancé, and three cousins. While looking out the window after hearing gunshots, she saw [Appellant] coming down the steps and knock on her apartment door. When she came back into her apartment, [Appellant] was in the bathroom.

In her statement to . . . detectives on April 17, 2011, she indicated that she left her apartment after hearing gunfire to look out of the window. Elante Sr. [a relative present in the apartment] locked the front door after her. She saw [Appellant] knock on the front door and Elante Sr. open the front door and allowed him inside. When she followed [Appellant] back into her apartment, she saw [Appellant] take her daughter, Ebony, into the bathroom and shut the door.

As stated supra, since Consuelo Matthews testified at trial, signed her statement and was cross-examined about her prior statement, her statement was admissible as substantive evidence. Therefore, the jury was free to believe all, some or none of what was in her initial statement.

Commonwealth witness Ivory Matthews' statement also corroborated Ashmore's statement. At trial, she testified she did not recall telling the detectives much of what was contained in her statement. However, on April 6, 2011, Ivory acknowledged that she did give a signed statement to . . . detectives.

In her statement Ivory recounted that: after the shooting, her sister Ebony, came into the house with Ashmore who told them that he saw [Appellant] walk up to the passenger side of a car and say to the occupants in the car, "y'all got to the count of five to give it up". And that after counting to four (4), [Appellant] shot . . . Morant in the head, ran around to the other side of the car and say to Du[B]ose, "give it up, the watch, the coat and the ring". He then shot at Du[B]ose. After Ashmore finished telling what happened, [Appellant] knocked on the apartment door, came into the apartment, went into the bathroom, and washed his hands. Ebony went into the bathroom with [Appellant] and was talking to him for a few minutes. Since Ivory testified at trial, acknowledged that she signed her statement and was cross-examined about her prior statement, her statement was admissible as substantive evidence. Therefore, the jury was free to believe all, some or none of what was in her initial statement.

The ballistic evidence corroborated Boyd's testimony as to the caliber of gun that he gave to [Appellant]. Nine (9) of the ten (10) bullets recovered were determined to have been fired from the same firearm[,] which was a 9 mm handgun.

Trial Court Opinion, 5/29/14, at 13-15.

Upon review of the record and pertinent law, we conclude the evidence presented at trial, and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient

to satisfy all elements of the offenses at issue here beyond a reasonable doubt.

Appellant argues the evidence was insufficient to support his convictions because DuBose did not (i) testify Appellant robbed Morant and DuBose, (ii) identify Appellant at trial as the shooter; or (iii) testify that anything was taken from them (DuBose and Morant). Additionally, Appellant argues that the evidence was insufficient because Appellant was not found in possession of stolen property or the handgun used in the shooting.

Appellant believes the Commonwealth has failed to prove beyond a reasonable doubt that Appellant committed the crimes ascribed to him because its witnesses recanted at trial their original unambiguous identification of Appellant as the perpetrator of the robbery and murder at issue here. Appellant ignores that the original statements provided by the witnesses are admissible, and in fact were admitted,[2] as substantive evidence against Appellant. ***Commonwealth v Brown***, 52 A.3d 1139, 1171 (Pa. 2012); Pa.R.E. 803.1(1). The jury, having heard the statements the witnesses made to the detectives, and having heard their "testimony" at trial, believed the version of the facts as first recounted to the officers, as opposed to the version provided at trial. The jury was entitled to do so, ***see***

---

[2] All witness statements were admitted as substantive evidence with one exception only, namely DuBose's statement. It was not admitted as substantive evidence because it was not adopted by DuBose either at the time of the statement or in court.

*Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011), and Appellant's unsupported argument to the contrary fails.

Appellant also ignores that inconsistencies in the witnesses' recounting of the facts do not raise questions of sufficiency of the evidence, but questions of weight. *Brown*, 52 A.3d at 1171; *Sanchez*, *supra*; *Commonwealth v. Montalvo*, 956 A.2d 926, 932 n.6 (Pa. 2008). The jury, again, decided to give more weight to the statements made to the officers than the testimony provided at trial. We cannot reweigh the evidence, or substitute our judgment for that of the jury. *See Sanchez*, *supra*.

The approach taken by Appellant—ignoring the evidence against him and emphasizing the "missing" evidence—shows Appellant also fails to recognize that under our standard of review for sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict winner, in this case, the Commonwealth. Appellant, however, impermissibly is asking us to view the evidence against Appellant in the light least favorable to the Commonwealth or, alternatively, view the absence of evidence against Appellant in the light most favorable to the Appellant.

Finally, Appellant fails to recognize that the Commonwealth did not need to prove that Appellant was in possession of the stolen goods or the handgun at the time of apprehension to carry its burden in connection with the robbery and PIC convictions. *See McElrath v. Commonwealth*, 592

A.2d 740, 745 (Pa. Super. 1991) (identification of defendant by victim was sufficient to sustain conviction for robbery); ***Commonwealth v. Robinson***, 817 A.2d 1153, 1162 (Pa. Super. 2003) (victim's testimony that armed assailants robbed her was sufficient to establish that defendant violated the Uniform Firearms Act, despite no firearm being recovered when defendant was apprehended by police). The law is clear on this point.

In light of the foregoing, we conclude the trial court correctly concluded the Commonwealth presented sufficient evidence to carry its burden.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/10/2015