J-S56041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMIR R. HALL | : | |
| | : | |
| Appellant | : | No. 38 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 20, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003861-2016

BEFORE: PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                 **FILED NOVEMBER 14, 2019**

Appellant Jamir R. Hall appeals from the judgment of sentence imposed after a jury convicted him of two counts of recklessly endangering another person (REAP) and one count of firearms not to be carried without a license.[1] Appellant challenges the weight of the evidence supporting his convictions. We affirm.

On February 4, 2016, Appellant and Tracy Betts (Betts), who previously had a history of verbal disagreements, engaged in a shoot-out that unfolded at two separate locations in Pottstown, Pennsylvania. N.T. Trial, 3/28/17, at 56, 58. That day, around 12:00 p.m., Betts saw Appellant double-parked in the middle of May Street. *Id.* at 59. Appellant was driving a silver Volkswagen

---

[1] 18 Pa.C.S. §§ 2705, 6106(a)(1). The trial court found Appellant guilty of persons not to possess firearms, 18 Pa.C.S. § 6105(a)(1), at a separate non-jury trial.

Golf. *Id.* at 90. Betts was driving a brown Buick Century. *Id.* at 65. Betts testified that as he tried to get around Appellant's car, Appellant rolled his window down, and Betts noticed that Appellant had a gun in his lap. *Id.* At that point, Appellant started shooting at Betts. *Id.*

Betts stated that he pulled up the street as he heard "about four or five shots hit [his] car." *Id.* When Betts exited his car to see if he "was hit or anything," Appellant began shooting again. *Id.* Betts, who remained outside of his vehicle, fired shots at Appellant using a gun that he retrieved from his glove box. *Id.* Appellant sped away from the area. *Id.* Betts stated that he then got into his car and "went a completely different way" from where the shooting occurred. *Id.* at 61.

After Appellant left the first scene, he ran a stop sign at the intersection of Lincoln Avenue and Grant Street. *Id.* at 31. Appellant crashed into a vehicle driven by James Douglass (Douglass), who was working as a courier at the time of the accident. *Id.* When Douglass exited his vehicle to check on Appellant's condition, Appellant was standing outside of his now-disabled Volkswagen. *Id.* at 33. Appellant was holding a gun. *Id.* at 34. He instructed Douglass to leave the area, and Douglass "turned around and just started running" away. *Id.* As he fled, Douglass saw another man arrive at the scene, and then heard "at least ten, maybe more, gunshots being fired." *Id.* at 34

Betts testified that he turned his vehicle onto Lincoln Avenue and saw that two cars had been in an accident. *Id.* at 62. Betts recognized Appellant's vehicle. *Id.* When Appellant saw Betts, he began firing shots toward Betts's

vehicle. *Id.* at 63. Betts stated that he saw Appellant "point the gun" and then observed "sparks from the gun." *Id.* Without putting his car in park, Betts jumped out of his car and fired nine or ten shots at Appellant. *Id.* at 63-64. Betts's car "coasted down towards" Appellant. *Id.* at 64. At that time, Appellant got into Betts's car and drove away. *Id.*

On March 28, 2017, Appellant proceeded to a jury trial on the following charges: aggravated assault–serious bodily injury (as to Betts), aggravated assault–bodily injury with a deadly weapon (as to Betts), receiving stolen property (Betts' vehicle), simple assault–bodily injury attempted (as to Betts), simple assault–bodily injury caused (as to Douglass), REAP (as to Betts), REAP (as to Douglass), firearms not to be carried without a license, and two counts of discharge of a firearm into an occupied structure.

At trial, the Commonwealth presented testimony from Betts, Douglass, and other civilian witnesses, along with several officers from the Pottstown Police Department. Appellant's counsel cross-examined Detective Brooke Fisher, who stated in her police report that Betts fired his gun at Appellant in self-defense. *See* N.T. Trial, 3/28/17, at 214-15. Ultimately, Detective Fisher testified that her conclusion was based on Betts's own account of the incident. *Id.* at 220. She also conceded that Betts could have retreated from the confrontation, but failed to do so. *Id.* at 220, 213-214.

At the conclusion of testimony, Appellant requested a jury instruction relating to self-defense. *Id.* at 236. The trial court responded that Appellant was not "asserting self-defense" and was "not entitled to a self-defense

instruction." *Id.* The trial court explained: "Your argument is against [Betts]. You had [Officer Fisher] concede the basic duty to retreat. I certainly will allow you to argue that, and I don't know that the Commonwealth would be objecting, because that is an accurate, simplified statement of one prong of self-defense." *Id.*

During deliberations, the jury submitted the following two-part question: "could we please have a written definition of self-defense? And does self-defense rule out aggravated assault and/or simple assault?" *See* N.T. Trial, 3/30/17, at 37. Before addressing the jury, the trial court explained to counsel that

> [f]or the record, the defense had not requested the pure self-defense charge, and we didn't really analyze it, but we did agree now that it was raised by question of the jury to give the charge. I offered counsel an additional closing argument, if you will, and counsel decided they didn't need that, that they had explored it enough.

*Id.* at 36-37. The trial court then instructed the jury on the use of deadly force in self-defense. *Id.* at 31. Shortly thereafter, following further discussion with counsel, the trial court addressed the jury as follows:

> All right, members of the jury, upon closer examination of your question, your prong two says, "and does self-defense rule out aggravated assault and/or simple assault?" I told you that if you find he acted in justifiable self-defense, it would. If you find that he shot a firearm and that he acted in self-defense, justifiable self-defense, the self-defense would apply also to discharging a firearm into a building, recklessly endangering. It would not apply to receiving stolen property or firearms not to be carried without a license. It also would apply to recklessly endangering James Douglass and the simple assaults.

- 4 -

I wanted to clarify that for you. Thank you very much.

*Id.* at 37. The jury subsequently requested a written copy of the self-defense instruction, which the trial court provided. *Id.* at 38.

On March 30, 2017, the jury returned a guilty verdict for REAP as to Betts and Douglass and firearms not to be carried without a license, but acquitted Appellant on aggravated assault, receiving stolen property, discharging a firearm into an occupied structure, and simple assault. *Id.* at 40. The trial court separately found Appellant guilty of persons not to possess firearms. The trial court deferred sentencing for the preparation of a pre-sentence investigation (PSI) report.

On July 20, 2017, the trial court sentenced Appellant to an aggregate term of seven and a half to twenty years' imprisonment. Appellant filed a timely post-sentence motion challenging the weight of the evidence, which the trial court denied on July 31, 2017.

Appellant filed a timely notice of appeal on August 29, 2017. After ordering Appellant to file a Pa.R.A.P. 1925(b) statement, the trial court explained that

> private counsel withdrew his appearance. Thereafter, [Appellant] was found to be eligible for representation through the Montgomery County Office of the Public Defender, and on November 15, 2017, the Public Defender was appointed. On that same day, [the trial court] issued a new order for a [Rule] 1925(b) statement. None was forthcoming. On March 20, 2018, [Appellant's] appeal was dismissed by the Pennsylvania Superior Court based upon appellate counsel's failure to file a brief.
>
> On August 22, 2018, [Appellant] filed a *pro se* petition for collateral relief pursuant to the Post-Conviction Relief Act (PCRA),

42 Pa.C.S. §§ 9541-9546. PCRA counsel was appointed, and on October 29, 2018, counsel filed an amended PCRA petition requesting that his direct appeal rights be restored so that he might file a *nunc pro tunc* appeal.

Trial Ct. Op., 3/6/19, at 1-2.

On November 30, 2018, the trial court reinstated Appellant's right to file a direct appeal *nunc pro tunc*. Appellant filed a timely notice of appeal on December 27, 2018. On January 11, 2019, Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement asserting that the guilty verdict for REAP was against the weight of the evidence. He argued that because the jury found him "not guilty of the charged assaultive behavior, it leads to the inevitable and entirely logical conclusion that [Appellant] was, at all relevant times, acting in self-defense . . . [and] could not be guilty of [REAP]." Appellant's Rule 1925(b) Statement, 1/11/19, at 2 (unpaginated).

The trial court issued a Rule 1925(a) opinion asserting that Appellant's weight claim was meritless. In its opinion, the trial court initially suggested that it did not instruct the jury on self-defense.[2] **See** Trial Ct. Op. at 3. However, the trial court correctly recalled that Appellant did not raise a self-defense claim at trial, and that "defense counsel's strategy was to attack the

---

[2] As noted above, the trial court did not give the self-defense instruction in its original jury charge. However, during deliberations, the jury submitted a question about whether self-defense applied to Appellant's case. Although Appellant did not claim self-defense at trial, the trial court ultimately gave the instruction after concluding that the issue "was raised by question of the jury." **See** N.T. Trial, 3/30/17, at 36.

- 6 -

credibility of the Commonwealth witnesses and the reliability of the testimony and evidence." *Id.* at 4.

Appellant raises one issue on appeal: "Was the verdict returned by the jury against the weight of the evidence?" Appellant's Brief at 3. In support, Appellant argues:

> [T]he verdicts returned by the jury were confusingly and prejudicially inconsistent. The jury found [Appellant] **not guilty** of the alleged crimes of violence, specifically aggravated assault, simple assault, and discharging a firearm into two residences. This finding by the jury must be construed as the jury finding that [Appellant] acted in self-defense at the times relevant. If [Appellant] was acting in self-defense with regard to these charges, [Appellant] **had to have been** acting in self-defense with regard to the charges of reckless endangerment. If self-defense insulated [Appellant] from criminal liability regarding the charges of aggravated assault, simple assault, and discharging a weapon into two residences, it is only logical that self-defense insulated [Appellant] from criminal liability with regard to the charges of reckless endangerment.

*Id.* at 8 (emphasis in original).

The following principles apply to challenges to the weight of the evidence:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the

facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Landis***, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Reese***, 31 A.3d 708, 716 (Pa. Super. 2011) (*en banc*) (citation omitted). An appellate court may affirm a ruling by the trial court on any basis as long as the decision is correct. ***Id.*** at 727 (citation omitted).

A claim of self-defense, if believed by the fact-finder, negates any *mens rea* of recklessness. ***Commonwealth v. Fowlin***, 710 A.2d 1130, 1132-33 (Pa. 1998). A fact-finder cannot conclude that a defendant justifiably acted in self-defense and simultaneously hold the defendant criminally liable for crimes involving recklessness. ***Id.*** at 1132.

However, "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, . . . even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal." ***Commonwealth v. Miller***, 35 A.3d 1206, 1213 (Pa. 2012). Further, "a criminal defendant convicted by a jury on one count [cannot]

attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." *Id.* at 1208-09 (citation omitted).

Here, to the extent Appellant challenges the alleged inconsistency between the verdicts, he is not entitled to relief. *See id.* at 1213. Contrary to Appellant's assertions, the jury did not make a specific finding on self-defense.[3] *See* N.T. Trial, 3/30/17, at 40-42. Further, Appellant's not-guilty verdicts on the remaining charges cannot be interpreted as a specific finding in relation to self-defense or to the evidence supporting his convictions for REAP. *See Miller*, 35 A.3d at 1206. As such, the not-guilty verdicts do not render Appellant's conviction against the weight of the evidence. *See id.*; *see also Landis*, 89 A.3d at 699.

Further, as noted by the trial court, Appellant did not raise a self-defense claim at trial. *See* Trial Ct. Op. at 3. When the trial court ultimately gave the instruction, it explained to the jury that if they found that Appellant acted in self-defense, then that defense would also apply to the REAP charges. *See* N.T. Trial, 3/30/17, at 37. Apparently, the jury chose to reject Appellant's self-defense claim, which they were entitled to do. *Landis*, 89 A.3d at 699; *Cf. Commonwealth v. Spotz*, 896 A.2d 1191, 1224 (Pa. 2006) (stating "[t]he law presumes that the jury will follow the instructions of the court").

---

[3] Appellant's claim is premised on his own conclusion that a not-guilty verdict on some charges is the equivalent of a specific finding by the jury that Appellant acted in self-defense.

Accordingly, we find no reversible error in the trial court's decision to deny Appellant's request for a new trial. ***See id.***; ***see also Reese***, 31 A.3d at 727.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/19