J-S40021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| GUSTAVO SOTO | : | |
| Appellant | : | No. 474 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 6, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001489-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| GUSTAVO SOTO | : | No. 618 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 6, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001489-2021

BEFORE: NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED JUNE 18, 2024**

The Commonwealth appeals from Gustavo Soto's ("Soto") judgment of sentence following his conviction of endangering welfare of children

_____

[*] Retired Senior Judge assigned to the Superior Court.

("EWOC").[1] Soto's cross-appeal challenges the weight of the evidence. We affirm.

The facts relevant to these appeals are as follows. On April 5, 2022, the trial court granted Soto's pre-trial motion *in limine* to admit evidence relating to the minor victim's knowledge about sexual matters as an exception to the Rape Shield Statute[2] and denied the Commonwealth's motion to preclude that evidence.

At Soto's jury trial, which began the next day, J.B.M., the victim, testified she lived with her mother and her stepfather, Soto, whom she called "Poppy," in Pennsylvania when she was in second grade, and during her fourth through sixth grade years after one year in Puerto Rico. *See* N.T., 4/6/22, at 24-28. She stated Soto penetrated her vagina with his finger when she was in third grade and did so periodically when they were home alone together after the family returned to Pennsylvania. *See id*. at 29-32, 55. J.B.M. averred that, on one occasion, Soto put his mouth on her vagina, and on another, he licked and bit her breasts and made her touch his penis. *See id*. at 33-36, 83-84. J.B.M. maintained on the last occasion Soto partially penetrated her vagina with his penis, causing her extreme pain. *See id*. at 36-39, 117. When she told him to stop, he did and apologized. *See id*. J.B.M. noted that, later that day, she sent her mother a text revealing Soto

---

[1] *See* 42 Pa.C.S.A. § 4304.

[2] *See* 18 Pa.C.S.A. § 3104.

inappropriately touched her. *See id*. at 43-44, 122-23. J.B.M. explained that, after a discussion with her mother, she agreed to "start[] from zero." *See id*. at 46. J.B.M. stated Soto later confronted her and said, "If you're old enough to be making accusations, then you're . . . old enough to be . . . fending for yourself," and "if you do, you'll see where you end up." *See id*. J.B.M.'s mother sent the child to live with her father and stepmother in Texas, where she has lived since then. *See id*. at 49-50, 143-44.[3]

In April 2022, the jury convicted Soto of EWOC,[4] and found him not guilty of a series of sexual offenses.[5] The court ordered a presentence investigation report ("PSI"). When prepared, the PSI stated[6] Soto was involved in a plot to kill J.B.M. to prevent her testimony and attached federal criminal complaints against two men allegedly paid to kill the victim.[7] Soto moved to strike the PSI's reference relating to the murder plot.

_____

[3] The defense case included, *inter alia*, testimony from J.B.M.'s mother and Soto.

[4] The crime was graded as a misdemeanor of the first degree. *See* N.T., 11/29/22, at 11-12, 14.

[5] Those charges included: rape of a child, involuntary deviate sexual intercourse ("IDSI") of a child, aggravated indecent assault of a child, unlawful sexual contact with a minor, indecent assault of a person younger than thirteen, and corruption of minors.

[6] Although the PSI does not appear in the certified record, the court and parties agree to its contents.

[7] The complaints did not allege Soto was the source of the payment.

In September 2022, the court convened a hearing on Soto's motion. Relevant to alleged threats to the victim, the court stated that, before trial, Chief Deputy Loncki told the court the District Attorney's Office had contacted her about threats Soto allegedly made to prevent J.B.M. from testifying. The court stated Deputy Loncki asserted the trial prosecutor had no concerns about security at trial. *See* N.T., 9/22/22, at 2-5.[8] Soto asserted he first learned about the alleged threat to kill J.B.M. when he received the PSI. *See id*. at 18-26. The court struck the allegations concerning the threat but stated at the forthcoming sentencing hearing it would admit the testimony of witnesses with knowledge relating to the threats. *See id*. at 26-27, 30.

The parties appear for sentencing in November 2022. The court sustained a hearsay objection when the victim's father began to testify about the FBI investigation of a plot to kill J.B.M. *See id*. at 33-35. The prosecutor objected to the entire PSI as hearsay. *See id*. J.B.M. testified that Soto's conduct had dramatically changed her life. *See id*. at 38-39.

The court stated the standard range sentence called for a sentence of restorative sanctions to nine months of imprisonment. *See id*. at 56. After a lengthy discussion of the facts it considered in sentencing, the court imposed a sentence of four years of probation and ordered Soto not to have any

---

[8] Because the court's conversation with Deputy Loncki had not been recorded, the court denied the Commonwealth's motion for transcription. *See* N.T., 9/22/22, at 10.

unsupervised contact with J.B.M. or children other than his biological children. *See id*. at 59.

Soto filed a timely post-sentence motion challenging the weight of the evidence. The Commonwealth filed a timely post-sentence motion and a motion for recusal. In February 2023, the court denied all the motions. The Commonwealth timely appealed and Soto timely cross-appealed. The parties and the court complied with Pa.R.A.P. 1925.

Soto raises one issue for our review:[9]

Was the verdict of guilty as to [EWOC] against the weight of the evidence?

The Commonwealth raises nine issues for our review:

A. Pre-Trial:

1) Did the trial court err in denying the Commonwealth's motion *in limine* but granting [Soto's] motion regarding the admission of evidence of past sexual activity of the minor victim prohibited by the Rape Shield statute . . .?

B. Sentencing:

1) Did the trial court err in granting [Soto's] motion to strike portions of the PSI and ordering portions of the PSI stricken without sufficient basis, even after the court was already aware of the allegations?

2) Did the trial court err in preventing the victim and her family from offering full prior comment on the sentencing, including the oral victim impact statement detailing the physical, psychological[,] and economic effects of the crime on the victim and the victim's family, and excluding them

_____

[9] For ease of analysis, we address Soto's single issue on cross-appeal before addressing the Commonwealth's issues.

- 5 -

from the completion of the original sentencing, and in violation of the Victim[s'] Right[s] Act . . .?

3) Did the trial court err in applying a double standard prohibiting the Commonwealth from introducing "hearsay" but allowing [Soto] to do so and relying on "hearsay" itself at sentencing; not ruling on the Commonwealth's objections to hearsay at sentencing; and preventing the Commonwealth from presenting argument at sentencing?

4) Did the trial court err in suggesting that the factual basis supporting the charge of [EWOC] was [Soto's] "endangerment by not protecting her or getting her help if these allegation—if she's making these allegations["], that "the child's troubled and needs help for making false allegations[,]" and that "[t]here was evidence that instead of reporting her assertions, failure to report, and instead of getting her counseling," that was the conduct that constituted the crime, despite no facts of record supporting the same, instead of criminal sexual misconduct, which was fully supported by the facts of record?

5) Did the trial court err in interpreting [Soto's] acquittal by the jury on charges of rape and other sexual offenses as a specific finding by the jury that no criminal sexual misconduct occurred?

6) Did the trial court err in disregarding the evidence, facts[,] and law, and sentencing norms and guidelines but instead sentencing [Soto] on "what my gut feels appropriate"?

C. Post[-]Sentence:

1) Did the trial court err in denying the Commonwealth's motion for recusal?

2) Did the trial court err in denying the Commonwealth's [motion for] reconsideration of sentence?

Commonwealth's Brief at 6-7 (unnecessary capitalization omitted).

Soto's sole issue implicates the weight of the evidence.

When reviewing a challenge to the weight of the evidence, this Court's standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding the facts, certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence challenge is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Mucci*, 143 A.3d 399, 410-11 (Pa. Super. 2016) (citation omitted). To prevail on a weight challenge, a defendant must prove the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *See Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).

A person endangers the welfare of children by knowingly violating a duty of care, protection, or support to the child. *See* 18 Pa.C.S.A. §4304(a)(1). A person who lives with a child and violates a duty of care is within the scope of liability. *See Commonwealth v. Leatherby*, 116 A.3d 73, 81 (Pa. Super. 2015). Child welfare statutes like EWOC "are designed to cover a broad range

of conduct in order to safeguard the welfare and security of . . . children." ***Commonwealth v. Krock***, 282 A.3d 1132, 1138 (Pa. Super. 2022). In determining what conduct constitutes EWOC, "the common sense of the community, as well as the sense of decency, propriety, and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." ***Commonwealth v. Lynn***, 114 A.3d 796, 818 (Pa. 2015) (citation omitted).

Consistency in a verdict is not required, and an appellate court will not inquire into, or speculate about, jurors' deliberations or the rationale behind the jury's decision; that the jury's decision may be the result of "mistake, compromise, lenity, or any other factor" is not a question for appellate review. ***Commonwealth v. Miller***, 35 A.3d 1206, 1213 (Pa. 2012). An acquittal "cannot be interpreted as a specific finding in relation to some of the evidence." ***See id***.

Soto asserts the jury's verdict shocks the conscience because, *inter alia*, J.B.M.'s mother was truthful and J.B.M. was not, the evidence showed the final sexual assault could not have occurred on the date J.B.M. claimed, J.B.M. did not accurately describe her disclosure of abuse to her mother, J.B.M.'s testimony about an incident of abuse in the family's basement was "pure folly," J.B.M. did not disclose the prior abuse even though Soto had not threatened her, and Soto did not commit EWOC by failing to recognize J.B.M.

had mental health issues that led her to falsely accuse him of abuse. *See* Soto's Brief at 70-83.

The trial court found the verdict did not shock its conscience. It noted J.B.M. testified Soto sexually abused her, and J.B.M.'s mother corroborated that her daughter reported Soto's abuse. The court recognized inconsistent verdicts are not a basis for relief, noted Soto took no action to obtain treatment for J.B.M. because of her disclosure, and found there did not exist facts so clearly of greater weight that to ignore them or give them equal weight was to deny justice. *See* Trial Court Opinion, 4/29/23, at 10-14.

The trial court did not abuse its discretion in denying Soto's claim. Although J.B.M.'s testimony contained inconsistencies about such matters as whether she had online sexual discussions with other juveniles, and she may have been incorrect about the date of the final act of sexual abuse, her testimony was not so tenuous, vague, and uncertain as to shock the trial court's conscience. That the jury acquitted Soto of the sexual charges does not constitute a specific finding in relation to some of the evidence. *See Miller*, 35 A.3d at 1213. Additionally, Soto's assertions J.B.M.'s mother was more credible than J.B.M. and J.B.M.'s testimony as to an act of abuse in the basement was "pure folly" asks this Court to reweigh the evidence. Our task is not to reweigh the evidence or to make credibility determinations, but to determine if the trial court abused its discretion. *See Commonwealth v. Wright*, --- A.3d ---, 2024 WL 161084 at *5 (Pa. Super, April 15, 2024);

*Mucci*, 143 A.3d at 410-11. On this record, Soto has not demonstrated an abuse of discretion.[10]

We next consider the Commonwealth's issues, the first of which asserts error in the trial court's pre-trial *in limine* rulings concerning the Commonwealth motion to bar, and Soto's motion to admit, evidence. **See** Commonwealth's Brief at 23-26. We conclude this claim is not properly before us.

The Commonwealth may obtain review of an unfavorable pretrial order in a criminal case pursuant to Pa.R.A.P. 1311, Interlocutory Appeals by Permission, when the trial court certifies the existence of a controlling question of law about which there is a substantial ground for difference of opinion and states that an immediate appeal from the order "may materially advance the ultimate termination of the matter[.]" **See Commonwealth v. Cosnek**, 836 A.2d 871, 877 (Pa. 2003), quoting 42 Pa.C.S.A. § 702(b). When a trial court refuses to make that certification, the Commonwealth may seek review of the denial of certification. **See Cosnek**, 836 A.2d at 877; Pa.R.A.P. 1311 Comment. Further, pursuant to Pa.R.A.P. 313, Collateral Orders, the Commonwealth may take a pre-trial appeal of a decision admitting evidence it claims violates the Rape Shield Statute. **See Commonwealth v. Jerdon**,

_____

[10] We find it unnecessary to reach Soto's assertion the trial court rejected his claim because he failed to obtain treatment for J.B.M. for lying about his abuse.

- 10 -

229 A.3d 278, 283-84 (Pa. Super. 2019) (stating "if appellate review is delayed until final judgment, and in the event of an acquittal, the Commonwealth's ability to pursue [an issue regarding the trial court's admission of evidence in violation of the Rape Shield Statute] will be irreparably lost due to the constitutional prohibition against double jeopardy").

The Commonwealth acknowledges that these types of appeals are normally taken pretrial but asserts, incorrectly, it had no opportunity for a pre-trial appeal because its right to interlocutory appeals "does not extend to the appealing of the admission of defense evidence." **See** Commonwealth's Brief at 23-26 and n. 7 (citing **Cosnek**).

The Commonwealth cites **Cosnek** for the proposition that an interlocutory appeal is unavailable when a defendant's *in limine* motion is granted. However, **Cosnek** itself contradicts that assertion: it states "the Commonwealth is not without the ability to seek review of a pre-trial ruling in favor of a defendant" and cites Pa.R.A.P. 1311 as a means to obtain that review. **See Cosnek**, 836 A.2d at 877.[11] Furthermore, under the facts in the instant matter the Commonwealth had the opportunity to take a pre-trial appeal under Pa.R.A.P. 313, concerning collateral orders, where the admissible evidence violates the Rape Shield Statute. **See Jerdon**, 229 A.3d

---

[11] Further, as of August 1, 2020, Pa.R.A.P. 341(c) permits a trial court to enter a final order as to one but fewer than all claims in a case where it determines an immediate appeal would facilitate resolution of the entire case.

at 283-84. Thus, the Commonwealth's first issue is not properly before us, and cannot be reviewed.

The Commonwealth next raises a series of issues relating to Soto's discretionary sentence in one combined argument.

A discretionary aspects of sentence claim is not appealable as of right; the appellant must invoke this Court's jurisdiction by satisfying a four-part test. This Court must determine:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly presented at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's claim has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (internal citations and brackets omitted). The assertion a trial court relied on impermissible matters including hearsay asserts a discretionary sentencing claim. **See Commonwealth v. Rhodes**, 990 A.2d 732, 745 (Pa. Super. 2009). A party waives any claim he fails to include in his Rule 2119(f) statement. **See Commonwealth v. Lively**, 231 A.3d 1003, 1011 (Pa. Super. 2020).[12]

---

[12] Although the case law addresses a defendant's failure to comply with Rule 2119(f), nothing in the Rule or the case law suggests it does not apply when the Commonwealth commits the identical failure.

In its brief, the Commonwealth asserts the trial court erred in: striking portions of the PSI, *see* Commonwealth's Brief at 32-33, preventing the victim and her family from offering "full prior comment" on the sentencing, *see* Commonwealth's Brief at 34-36, applying a double standard on the admission of hearsay, *see* Commonwealth's Brief at 36-37, suggesting the factual basis for Soto's conviction was his failure to get help for the victim for her false allegations, *see* Commonwealth's Brief at 37-38, interpreting the jury's verdict as a specific finding as to the evidence, *see* Commonwealth's Brief at 38, and in sentencing on its own "gut" feeling, *see id*. at 39. However, the Commonwealth failed to raise any of these claims in its Rule 2119(f) statement. In its 2119(f) statement, it baldly asserted that the trial court failed to consider relevant sentencing criteria. *See* Commonwealth's Brief at 5. Thus, the Commonwealth waived all issues unrelated to sentencing criteria. *See Lively*, 231 A.3d at 1011.[13] The Commonwealth further failed to allege, much less demonstrate, that the issues it presents raise substantial questions, an additional basis for a finding of waiver. *See Moury*, 992 A.2d at 170.[14]

---

[13] Although Soto did not object to the defects in the Commonwealth's Rule 2119(f) statement, this Court has the power to enforce compliance with the rule *sua sponte*. *See Commonwealth v. Gambal*, 561 A.2d 710, 713 (Pa. 1989); *Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004).

[14] The Commonwealth's final sentencing issue asserts the trial court disregarded the fact, evidence, law, sentencing norms and guidelines and sentenced Soto to "what my gut feels appropriate." *See* Commonwealth's Brief at 39. The Commonwealth waived this one-paragraph claim by failing
*(Footnote Continued Next Page)*

Given these defects, the Commonwealth's discretionary sentencing claims are waived.

The Commonwealth's next issues assert the trial court erred in denying its motion for recusal. The standard for recusal is as follows:

> It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice[,] or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner . . . . The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.

*Commonwealth v. White*, 910 A.2d 648, 657 (Pa. 2006).

The Commonwealth's recusal argument consists of a list of phrases lettered a.-p., and then asserts the court falsely accused it of inaccurately saying its phone conversation with Deputy Loncki about pre-trial threats to the victim was recorded and on the record, inaccurately recited facts concerning pre-trial discovery, and "fabricate[d]" the circumstances

_____

to support it with legal authority, or reference to where the alleged error occurred. *See* Pa.R.A.P. 2119(b), (c).

concerning the grading of the EWOC charge. **See** Commonwealth's Brief at 39-43.

The trial court notes it performed the required self-assessment and did not perceive an appearance of impropriety undermining confidence in the judiciary, had no bias or interest in the case, and had no doubt it could fairly and impartially decide the case. **See** Trial Court Opinion, 4/29/23, at 18-23. The court states the phone discussion that is the subject of the Commonwealth's assertion was off the record. **See id**. at 5. It states that the discovery issue arose when the Commonwealth added a document to a lengthy packet of electronic discovery already produced without informing Soto that it had added new material to that discovery. **See id**. at 19. Finally, the court states it committed no impropriety concerning the EWOC charge. **See id**. at 20-23.

The Commonwealth has not demonstrated the trial court abused its discretion by denying its recusal motion. We decline to consider lettered paragraphs a.-p. The assertions in those paragraphs are not even stated in full sentences and are unaccompanied by discussion of why those alleged facts compel recusal, or citations to the record or legal argument, as required by Pa.R.A.P. 2119(b), (c), (e). We are not required to comb the record to seek the factual underpinnings of a party's claim, nor will we serve as a party's counsel and develop its arguments. **See Commonwealth v. Samuel**, 102

A.3d 1001, 1005 (Pa. Super. 2014); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa Super. 2007).

Further, the Commonwealth fails to direct us to the page of the trial court's opinion allegedly stating the Commonwealth's motion included false allegations about whether the telephone conversation with Deputy Loncki concerning alleged pre-trial threats to J.B.M. was recorded, on the record, and transcribed, and fails to provide record citations to the on-the-record discussion of that conversation. **See** Commonwealth's Brief at 41-42. Moreover, the record shows the court addressed the circumstances of the phone conference and explained it occurred on speakerphone and was not transcribed. **See** N.T. 9/22/22, at 4-7. In response, the Commonwealth stated "that resolves the issue. . . . The issue really is moot. And I certainly accept the court's representations." **See id**. at 8. Absent a reviewable record that the trial court affirmatively misrepresented the nature of the conversation or the Commonwealth's representations concerning it, we will not review this issue.

We also find no support for the Commonwealth's representation that the court misstated the facts concerning discovery. At trial, Detective Erika Burk testified she prepared both an original and supplemental report. **See** N.T., 4/6/22, at 199-200. Soto's attorney asserted he had not received the supplemental report. **See id**. at 200. In an *in camera* discussion, the court determined the detective's supplemental report had been added, via an

- 16 -

upload, to a prior discovery package of more than 200 pages that had been prepared months earlier, but the Commonwealth had not notified Soto's counsel it had supplemented the prior discovery. *See id*. at 202-21. The Commonwealth's expression of umbrage at the trial court's recitation of facts concerning this issue is thus wholly misplaced.

The Commonwealth states the court unfairly accused it of misstating the facts concerning the charging and grading of EWOC as its final contention in support of recusal. As the trial court opinion explains, the Commonwealth charged EWOC as a misdemeanor, rather than as a felony related to a course of conduct, and the Commonwealth did not object to the court's jury instruction. *See* Trial Court Opinion, 4/29/23, at 20-23. From our review, the trial court accurately summarizes what occurred, and did not deride the Commonwealth for the error in charging. Thus, the Commonwealth's recusal claim is not valid.

The Commonwealth's final issue asserts that its request for reconsideration was denied, and "[f]or the same reasons as the initial sentence and recusal, the Commonwealth believes this was in error." *See* Commonwealth's Brief at 43. We have already addressed the Commonwealth's sentencing claims *supra* and found them meritless, we decline to consider the issue further.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/18/2024