J-S32033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KAREEM JOHNSON | : | |
| | : | |
| Appellant | : | No. 1235 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006066-2018

BEFORE: LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 05, 2024**

Appellant, Kareem Johnson, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for possessing instruments of crime ("PIC") and persons not to possess firearms.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On June 13, 2018, at approximately 10:00 p.m., Omar English ("Victim") was driving his vehicle in the Overbrook Park neighborhood of Philadelphia.  As Victim's vehicle approached the intersection of 63rd Street and Lebanon Avenue, gunfire erupted.  Bullets struck the driver's side door of Victim's vehicle.  Later that evening, police interviewed Victim.  Victim stated that the

_____

[1] 18 Pa.C.S.A. §§ 907 and 6105, respectively.

shots emanated from a group of men who were standing on the block, but "[j]ust one had a gun." (N.T. Trial, 2/5/20, at 53). Victim provided a description of the shooter to police. Victim also identified Appellant as the shooter from a photo array.

On December 21, 2018, the Commonwealth filed a criminal information charging Appellant with attempted murder, aggravated assault, persons not to possess firearms, carrying a firearm without a license, carrying firearms on public streets in Philadelphia, PIC, simple assault, and recklessly endangering another person ("REAP"). Following a bench trial on February 5, 2020, the court convicted Appellant of PIC and persons not to possess firearms. Significantly, the court found Appellant not guilty of the remaining offenses. On April 15, 2021, the court sentenced Appellant to an aggregate term of three (3) to six (6) years' imprisonment, followed by five (5) years of probation. Appellant did not file post-sentence motions or a notice of appeal.

On April 13, 2022, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. The court appointed counsel, who filed an amended PCRA petition. On April 25, 2023, the court granted relief and reinstated Appellant's right to pursue a direct appeal *nunc pro tunc*. Appellant timely filed a notice of appeal *nunc pro tunc* on May 11, 2023. On November 7, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. That same day, Appellant filed his Rule 1925(b) statement.

Appellant now raises two issues for our review:

Is the evidence sufficient, as a matter of law, to convict [Appellant] of the crime of [PIC], 18 Pa.C.S.A. § 907, where the evidence failed to establish that [Appellant] possessed any instrument of crime with intent to employ it criminally?

Is the evidence sufficient, as a matter of law, to convict [Appellant] of the crime of possession of a firearm by a prohibited person, 18 Pa.C.S.A. § 6105, where the evidence failed to establish that [Appellant] possessed a firearm?

(Appellant's Brief at 4) (internal quotation marks omitted).

Appellant's issues are related, and we address them together. Appellant asserts that the trial court's decision to convict him of PIC and persons not to possess firearms while acquitting him of the remaining offenses amounts to an impermissible, inconsistent verdict. Appellant contends that the not guilty verdicts for attempted murder, aggravated assault, simple assault, and REAP demonstrated that Appellant "did not exhibit an intent to employ any instrument criminally on the date at issue." (*Id.* at 22). Regarding Appellant's conviction for persons not to possess firearms, Appellant argues that the not guilty verdict for carrying firearms on public streets in Philadelphia showed that Appellant did not actually possess a firearm. Further, Appellant maintains that there were discrepancies between Victim's trial testimony and Victim's statement to police on the night of the shooting. Specifically, Appellant emphasizes that Victim could not identify Appellant as the shooter at trial. Under these circumstances, Appellant insists that the Commonwealth presented insufficient evidence to establish essential elements of PIC and

persons not to possess firearms. Appellant concludes that this Court must reverse his convictions, vacate the judgment of sentence, and dismiss the charges with prejudice. We disagree.

Pennsylvania law permits inconsistent verdicts, provided sufficient evidence supports each conviction. *Commonwealth v. Miller*, 613 Pa. 584, 588, 35 A.3d 1206, 1208 (2012).

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

*Commonwealth v. Rose*, 960 A.2d 149, 158 (Pa.Super. 2008), *appeal denied*, 602 Pa. 657, 980 A.2d 110 (2009) (quoting *Commonwealth v. Frisbie*, 889 A.2d 1271, 1273 (Pa.Super. 2005)). "[A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence…." *Miller, supra* at 596, 35 A.3d at 1213.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the

evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code also defines the offense of PIC as follows:

**§ 907. Possessing instruments of crime**

**(a) Criminal instruments generally.—**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

\* \* \*

**(d) Definitions.—**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\* \* \*

**"Instrument of crime."** Any of the following:

(1) Anything specially made or specially adapted for criminal use.

(2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S.A. § 907(a), (d).

The Uniform Firearms Act provides, in relevant part, as follows:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa.Super. 2018) (quoting ***Commonwealth v. Brooks***, 7 A.3d 852, 857 (Pa.Super. 2010)). "[A] perpetrator's identity may be established with circumstantial evidence." ***Commonwealth v. Dunkins***, 229 A.3d 622, 632 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___,

142 S.Ct. 1679, 212 L.Ed.2d 584 (2022). "This Court has recognized that 'evidence of identification need not be positive and certain to sustain a conviction.'" *Id.* (quoting *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa.Super. 2016)).

Instantly, the Commonwealth presented multiple witnesses to establish that Appellant committed the crimes at issue. Initially, the Commonwealth called Officer Michael Mowery, who responded to the radio call for shots fired. Officer Mowery testified that he met Victim "[m]aybe a half mile to a mile" away from the crime scene. (N.T. Trial at 24). Victim told Officer Mowery "that as he was driving past the Rite Aid at 6200 Lebanon that somebody started shooting at him." (*Id.*) Victim described the suspects as "one being a black male, thin build, wearing glasses and camo pants," and the other as a "black male, khaki top, bottom, with face tattoos." (*Id.* at 25).

Next, the Commonwealth called Detective Dennis Slobodian, who was assigned to investigate the shooting. Detective Slobodian went to the crime scene and recovered eight (8) .45-caliber cartridge casings. The detective also observed parked cars that were struck by gunfire. Later that evening, Detective Slobodian received a flash information containing a description of the suspects. The detective relayed the description to local officers. One of those officers informed Detective Slobodian about "persons who matched the information who were known to be in the area." (*Id.* at 33). Detective Slobodian confirmed that Appellant was one of the suspects arrested for the

shooting.

Thereafter, Victim testified about the circumstances leading up to the shooting. Victim explained that he had a relationship with Appellant's sister, but the relationship ended. A few hours before the shooting, Victim and his friend, Mr. Reid, were driving through Overbrook Park. Victim and Mr. Reid encountered Appellant's brother, Basil, and approximately five of his confederates. Victim pulled over so that Mr. Reid could "squash the beef" with the other group, as there was a dispute over Victim's relationship with Appellant's sister. (*Id.* at 43). An argument ensued, and someone punched Mr. Reid. At that point, Victim and Mr. Reid drove off.

Later that night, Victim again drove through Overbrook Park. As Victim drove down 63rd Street, he heard gunshots. Bullets struck the vehicle's "roof, … driver's side back door, [and] under the muffler." (*Id.* at 46). At first, Victim denied seeing the shooter. The Commonwealth, however, confronted Victim with the signed statement that he gave to police on the night of the shooting.[2] In it, Victim described the shooter as follows:

> He got tattoos on his arms and on his face, he's black, brown
> skinned, he's in his 20's, he's big, probably like 5'11". I
> think he was wearing like a tan Dickie suit[.]

---

[2] Detective Jeff Gilson testified about Victim's statement. During Detective Gilson's testimony, the parties stipulated that the detective took the statement, Victim's signature appears at the bottom of each page, and the statement documents Victim's answers to the detective's questions. (*See* N.T. Trial at 78-79).

(*Id.* at 53).

The Commonwealth also confronted Victim with two photo arrays that he viewed on the night of the shooting. The parties stipulated that after viewing the first photo array, Victim "identified [Appellant's] brother as being with [Appellant] that night, specifically giving the response … 'Yes, he's the brother of the shooter. He was with him tonight.'" (*Id.* at 59). The parties also stipulated that after viewing the second photo array, Victim "identified photograph number 3, who is [Appellant]. His exact response was … 'Yes, he's the shooter. He's the brother of the first guy I identified.'" (*Id.* at 62). Additionally, the parties stipulated that Appellant's criminal history renders him ineligible to possess a firearm under Section 6105.[3] (*Id.* at 83).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's convictions. *See Sebolka, supra*. Specifically, the evidence established that Appellant possessed a firearm with intent to employ it criminally. *See* 18 Pa.C.S.A. § 907. Further, the evidence demonstrated that Appellant possessed the firearm while ineligible to do so. *See* 18 Pa.C.S.A. § 6105. Because sufficient

_____

[3] Appellant's sole witness was Jameva Wright, who testified that she was "[i]n the house" with Appellant "[a]ll day" on the date of the shooting. (*See* N.T. Trial at 9, 10). Nevertheless, Ms. Wright admitted that Appellant left the house at "close to 10 o'clock," to go "[t]o the corner" for approximately twenty minutes to conduct a custody exchange for his child. (*Id.* at 12, 13). Ms. Wright also testified that Appellant went to the same corner where the shooting had occurred. (*See id.* at 20-21).

evidence supported the verdicts, any inconsistency in the verdicts does not warrant reversal. ***See Rose, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2024